# Renick v. Boyd.

99      555
e 36 SC ²387

1. An action of replevin will not lie for growing crops severed by the person in possession under claim of title to the land on which the crops were grown.

2. The provisions of the act of May 15, 1871, Pamph. L. 268, enabling the owner of realty to sustain an action of replevin to recover timber, lumber, coal or other property severed from the realty, notwithstanding the fact that the title to the land may be in dispute, do not apply to the case of growing crops.

3. The words " other property," employed in the said Act, were intended to include only articles of the same generic character as those already enumerated,—such as slate, marble, iron ore, zinc ore, and all other forms of minerals and ores, building-stone and fixtures, and machinery of every description which have been permanently affixed to the realty.

[Renick *v.* Boyd.]

February 7th 1882.  Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Chester County:* Of January Term 1882, Nos. 228, 229.

Two actions of replevin, by James Renick against John Boyd, to recover hay, oats and corn after they were harvested. Pleas, non-cepit, and property.

On the trial, before CLAYTON, P. J., the following facts appeared : At a public sale of land of the estate of one Correy, on December 28th 1879, the plaintiff purchased a tract of 118 acres, the purchase money of which was paid and deed delivered on March 31st 1880.  The defendant was at that time in possession of said tract under a claim of title, and occupied the dwelling-house thereon.  The plaintiff, by his employés, took possession of the land, and farmed the same during April and May 1880, planting corn, oats and grass seed.

The defendant, who continued to occupy the dwelling-house, in June 1880, took possession of the land so farmed by the plaintiff, and harvested the oats and hay growing thereon.  The first action of replevin was brought July 21 1880, for the hay and oats then in the barn.  The defendant subsequently cut the corn, and the second replevin was brought October 29th 1880, for the corn in the shock.

In the meantime, on August 18th 1880, the plaintiff brought ejectment to recover possession of the land.  On January 4th 1881, he recovered a verdict in his favor, on which judgment was entered, and on February 9th 1881, plaintiff recovered possession under a writ of habere facias possessionem.

These actions of replevin were tried together May 17th 1881. The Court charged the jury as follows :

" [Under the evidence it clearly appears, that at the time the grass, oats and corn were cut and harvested, the defendant was in actual adverse possession of the land in dispute, by virtue of a claim of title; and, according to law, an action of replevin will not lie, under such circumstances, for the growing crops and products of land.]

" The remedy must be sought in another form of action—an action upon the case for damages for the mesne profits of the land, after the determination of the question of title in an action of ejectment.  The writ of ejectment was issued and has been tried, but there has been no action for the mesne profits.

" In other words, I instruct you that the products of land in the actual possession of another, may be lawfully cut and harvested by the person in possession.

" [The defendant, being in possession under a claim of right when the grass, oats and corn in dispute were cut and harvested, the plaintiff's remedy is in an action for damages.  He cannot

[Renick *v.* Boyd.]

recover the thing itself, and your verdict should, therefore, be for the defendant in both cases.]"

The jury accordingly found a verdict for the defendant in each case, and judgments were entered thereon. The plaintiff thereupon took these writs of error, assigning for error the portions of the above charge included in brackets.

*Wm. M. Hayes* (*A. P. Reid* with him), for plaintiff in error.—We were entitled to recover under the Act of May 15th 1871, P. L. 268, Purd. Dig. 1266, pl. 6, which provides : " In all actions of replevin now pending or hereafter brought, to recover timber, lumber, coal, or other property severed from realty, the plaintiff shall be entitled to recover, notwithstanding the fact that the title to the land from which said property was severed, may be in dispute : Provided, said plaintiff shows title in himself at the time of the severance."

That Act was intended to cover just such a case as this, where the defendant is insolvent, and may remove the property, when a verdict for mesne profits in ejectment will prove illusory. We complied with the proviso in the Act, having shown title in ourselves in the ejectment.

*Chas. II. Pennypacker* (*John J. Gheen* with him), for the defendant in error.—The Act of 1871 applies specifically to timber, lumber and coal. The phrase " or other property " must be construed, or other similar property ; it cannot cover crops severed by one in possession under claim of title. The Act was not intended to establish a new method of trying title to real estate in an action of replevin for crops. Morris on Replevin 108 ; Mathias *v.* Sellers, 5 Norris 492 ; Lake Shore R. R. Co. *v.* Ellsey, 4 Norris 285 ; Reinheimer *v.* Hemingway, 11 Casey 432.

Mr. Justice GREEN delivered the opinion of the court, February 20th 1882.

These were two actions of replevin, brought to recover certain hay, oats and corn, after the same had been harvested, upon land of which the defendant was in the actual and adverse possession, both before, and at, the time the crops were gathered. The plaintiff had brought an action of ejectment against the defendant to recover possession of the land, and this action was pending at the time the crops in question were severed from the freehold. The plaintiff claims that he is entitled to recover in this action under the provisions of the Act of May 15th 1871 P. L. 268. That Act is as follows :

" In all actions of replevin now pending or hereafter brought to recover timber, lumber, coal or other property severed from the

[Renick *v.* Boyd.]

realty, the plaintiff shall be entitled to recover, notwithstanding the fact that the title to the land from which said property was severed may be in dispute: Provided, said plaintiff shows title in himself at the time of severance."

The learned judge of the court below held that this Act was not intended to apply to the case of growing crops severed by the person in possession under claim of title to the land on which the crops were grown. In this opinion we concur. Prior to the passage of the act in question, it had always been held that replevin would not lie by one out of possession to recover against one in possession and claiming title, for any kind of chattels which had become such by severance from the freehold of which they had previously formed a part. Thus in Brown *v.* Caldwell, 10 S. & R. 114, it was held replevin does not lie by one not in the actual exclusive possession of land, whatever title he may claim, against one who is in the actual, visible, notorious, exclusive possession and occupation thereof, claiming the right for slates taken out of a quarry on the land.

In Powell *v.* Smith, 2 Watts 126, in the application of the same doctrine, we held that replevin would not lie to recover fixtures separated and removed from a mill: on p. 127, GIBSON, C. J., said: "The principle which is to govern this case was settled in Mather *v.* Trinity Church, 3 S. & R. 509 ; Baker *v.* Howell, 6 Id. 476; and Brown *v.* Caldwell, 10 Id. 114; in which it was determined, on principle and authority, that the right of property in a chattel which has become such by severance from the freehold can not be determined in a transitory action by a trial of the title to the freehold, because the title to land might otherwise be tried out of the county. An action of trover or replevin for such a chattel therefore, does not lie by a plaintiff out of possession . . . . Independent of this technical inhibitory principle which, however, is decisive, it would provoke much useless litigation and be attended with great practical mischief, if an owner out of possession were suffered to harass the actual occupant with an action for every blade of grass cut, or bushel of grain grown by him, instead of being compelled to resort to the action for mesne profits, after a recovery in ejectment, by which compensation for the whole injury may be had at one operation." Other authorities are to the same point. The Act of 1871 has doubtless changed this rule, so far as it relates to the particular forms of property there mentioned. These are timber, lumber, coal and other property, severed from the realty. It is claimed that growing crops come within the designation "other property," and therefore that the Act includes them also. But a very slight consideration of the Act shows not only that they are not expressly mentioned, but that they are not necessarily implied,

[Renick *v.* Boyd.]

under this general description.   There are many other forms of property besides timber, lumber and  coal, which constitute part of the realty.   Thus slate, marble, iron ore, zinc ore, and all other forms of minerals and ores in place, building-stone and fixtures and machinery of every description which have been permanently affixed to the realty.   To all of these the expression " other property " in the Act, may well be applied.

They are of the same generic character with the other kinds of property expressly mentioned.   That is, they are a part of the realty itself, and when converted into personalty, it is by an act of severance such as works a conversion of timber, lumber and coal.   Now growing crops are only ephemeral.   They are produced, not by nature as a part of the land, but by the labor of man, combined with the operations of nature, and are never intended to become permanently affixed to the freehold, but to be removed from it at maturity.   The very purpose of their cultivation is to make them personalty.   Hence the spirit and meaning of the act in no sense requires that they should be considered in the same category with such constituent elements of the earth as timber, lumber and coal.   In Allen's Appeal, 32 P. F. Smith 302, the words of an Act giving a preference for wages to persons employed, " in any works, mines, manufactory or other business, &c." were construed to apply only to any other business *ejusdem generis.*   The same rule of construction applied here would exclude growing crops as not being of the same kind or  class with those expressly named in the Act. We consider that the purpose of the Act was to remedy a different kind of evil, which existed prior to its passage.   Formerly, when one in possession cut down standing timber or severed and removed coal, slate, ores, or minerals from the realty, the only remedy of the true owner was by the action for mesne profits or by estrepement or other proceedings to stay waste. But these were not adequate, as the tenant in possession could make way with and convert these articles, and, being insolvent, a verdict and judgment for damages or a mere preventive order staying future acts, furnished no sufficient relief; and we apprehend it was the purpose of this Act to remedy this class of wrongs.   These considerations are inapplicable, however, to the case of growing crops.   They are generally the fruits of the labor of the tenant in possession, and it would be a most serious innovation upon the existing state of the law, as well as a  great hardship upon the person in possession under claim of title, to subject him to a succession of actions for his various crops when harvested, and to the necessity of trying complicated and vexatious questions of title to land, in the determination of the ownership of his fruits, vegetables and crops.   Such a construc-

[Mathews s. Sharp.]

tion is not required by any reading of the Act, and is therefore not necessary to be made.

Judgment affirmed.