## ALABAMA & Others *v.* MONTAGUE & Another.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF TENNESSEE.

Submitted March 31, 1886.—Decided April 12, 1886.

By an act of the Legislature of Alabama the State loaned its credit to the Alabama & Chattanooga Railroad Company, upon condition that the company should first give to the State "a first mortgage upon the lands granted by the United States to said Railroad Company" and a first mortgage "on the telegraph line and telegraph offices along the line of said road belonging to said company; also on the machine shops and all other property in the State and in Georgia, Tennessee and Mississippi belonging to said company; also on all coal mines now opened or hereafter to be opened and worked, belonging to said company; also upon all iron or other mineral lands, and all iron-manufacturing establishments now in operation and hereafter to be constructed." The company made a mortgage to the State in which the words of description were identical with the language of the statute. In a suit in equity brought to foreclose the mortgage, as covering some town lots in Tennessee not granted by the United States to the company, and not coming within either of the specified classes, *Held :*

(1.) That the words of description in the mortgage did not cover the lots.

(2.) That the words "all other property" were intended to cover property of the company in and about the telegraph offices, machine shops, coal mines, iron mines and manufacturing establishments, about which a doubt might otherwise arise whether it was part of those classes of property.

*Wilson* v. *Boyce,* 92 U. S. 320, distinguished.

This was a bill in equity to foreclose a mortgage alleged to have been made by the Alabama and Chattanooga Railroad Company to the State of Alabama on certain town lots in Chattanooga. The case is stated in the opinion of the court. For the purpose of understanding the points made in argument, it is sufficient to say that the act of the Legislature of Alabama, authorizing the loan of the credit of the State to the company contained the following provision: "That the Governor of the said State shall only issue said bonds upon receiving in exchange therefor an equal amount of first mortgage bonds of said railroad company, bearing the same rate of interest as the above-mentioned State bonds, and secured by first mortgage upon the lands granted by the United States to said railroad company, and upon any interest which said company now has or may hereafter lawfully acquire in or to said lands, with this reservation," "Provided further, That the Governor shall require said railroad company, before issuing to said company said bonds, to give the State of Alabama a first mortgage on the telegraph line and telegraph offices along the line of said road belonging to said company; also on the machine shops and all other property in the State and in Georgia, Tennessee, and Mississippi belonging to said company; also on all coal mines now opened, or hereafter to be opened and worked, belonging to said company; also upon all iron or other mineral lands and all iron-manufacturing establishments now in operation and hereafter to be constructed."

The company executed the required mortgage with words of description identical with those in the mortgage. It was not claimed in the bill that the premises in controversy were embraced in either class of property specially named: but they were shown to have been acquired by deed subsequent to the mortgage, in execution of a contract for sale made prior to it.

Decree below for respondent on the ground that the statute of limitations was a bar, from which complainants appealed.

*Mr. Samuel F. Rice* for appellants argued upon the question decided here:

The statutory provisions of Tennessee (the *lex rei sitæ*), in relation to conveyances of every kind, were intended "to reduce the forms of conveyance to their simplest elements, and to give *the largest meaning to granting words*, unless limited by the instrument itself." *Daly* v. *Willis*, 5 Lea, 100, 104. Hence, the largest meaning must be given to "the granting words" contained in the mortgage of March 2, 1870. *Pennock* v. *Coe*, 23 How. 117.

Upon the admitted or established facts, that on March 25, 1869, the Alabama & Chattanooga Railroad Company purchased the lands here in controversy from J. P. McMillin, the then undisputed owner, and paid him one third of the purchase-money and acquired control thereof; and that afterwards, on March 2, 1870, the company executed to the State of Alabama the mortgage of that date, embracing amongst other specified lands "all other property in said States of Alabama, Georgia, Tennessee and Mississippi, belonging to said company;" and that said mortgage was duly registered on March 24, 1870, in Hamilton County, Tennessee, in which county the lands in controversy are situated; and that afterwards and on March 31, 1870, said McMillin received from said company the other two-thirds of the purchase-money and executed a deed of conveyance of the lands here in controversy to said company,— the said conveyance of McMillin to said company, as against all persons who, like the defendants, acquired or derived their only claim to said last-mentioned lands from or under the mortgagor, by transactions entirely subsequent to the registration of the mortgage, converted the equitable title of the company "into a legal title, which, at once, by operation of law, inured to the benefit" of the mortgagee. *Skidmore* v. *Pittsburg, Cincinnati & St. Louis Railway Co.*, 112 U. S. 33; *Bush* v. *Marshall*, 6 How. 284, 291; *Thredgill* v. *Pintard*, 12 How. 24; *Henshaw* v. *Wells*, 9 Humphreys, 568; *Crook* v. *Lunsford*,

2 Lea, 237; *Bank of Greensboro* v. *Clapp*, 76 N. C. 482; *Crane* v. *Turner*, 7 Hun, 357; *Van Rensselear* v. *Kearncy*, 11 How. 297, 323; *Doe* v. *Larmore*, 116 U. S. 198.

The recital of the execution of the bond for title in the deed of McMillin to the Alabama and Chattanooga Railroad Company, is sufficient evidence of the execution of that bond, as against the defendants in this cause. *Carver* v. *Astor*, 4 Pet. 1; *Crane* v. *Morris*, 6 Pet. 598.

The parting with, or loan of money, or its equivalent, upon the faith of the mortgage, is, *pro tanto*, a sale, and gives such a mortgagee, to the extent of the loan, all the rights of a *bona fide* purchaser for value without notice. *Chadwell* v. *Wheless*, 6 Lea, 312; *Carpenter* v. *Longan*, 16 Wall. 271.

The objection, that the mortgage does not convey the lands here in controversy, by specific designation and description, is clearly insufficient, both upon reason and authority. *McGavock* v. *Deery*, 1 Coldwell, 265; *Seifreid* v. *People's Bank*, 2 Tenn. Ch. 17; *Sheets* v. *Selden's Lessee*, 2 Wall. 177; *Wilson* v. *Boyce*, 92 U. S. 320; *Spindle* v. *Shreve*, 111 U. S. 542; *Frey* v. *Clifford*, 44 Cal. 343; *Barton's Lessee* v. *Morris*, 15 Ohio, 408; *Hoxie* v. *Lawrence*, 117 Mass. 111; *St. Louis, etc., Railway Co.* v. *McGee*, 115 U. S. 469, 476, citing approvingly, *Wilson* v. *Boyce.*

*Mr. Xenophon Wheeler* for appellees.

MR. JUSTICE MILLER delivered the opinion of the court.

This is an appeal from the Circuit Court of the United States for the Eastern District of Tennessee. The suit was originally brought in the Chancery Court of Hamilton County, from which it was removed into the court first mentioned. It was a bill to foreclose a mortgage on twenty-two acres of land in that county, which is described with particularity by metes and bounds in the bill, and is there alleged to have been purchased of J. P. McMillin by the Alabama and Chattanooga Railroad Company, the mortgagor, on the 25th day of March, 1869. No such description of the land is found in the mort-

gage which is the foundation of this suit, and if it is covered by that mortgage, it is by a phrase which, it must be supposed, was intended to cover it by a general reference to all other property of the mortgagor in the State of Tennessee, rather than by any specification of this property.

The defendants deny that, by any fair or just construction of the mortgage, it can be held to include the twenty-two acres in question.

There are other grounds of defence set up, on one of which the decree against plaintiffs was rendered, namely, that the suit was barred by the statute of limitation. But if the defendants are right in the assertion that the land was not conveyed by the mortgage deed, all other questions are immaterial.

It appears that the Legislature of the State of Alabama authorized the governor of the State to issue to the Alabama and Chattanooga Railroad Company its bonds to the amount of $2,000,000. The statute, however, required the governor, before he delivered these bonds, to demand of the company its own bonds of an equal amount, secured by a mortgage on certain property mentioned in the statute. The mortgage was made and the bonds issued to the State in exchange for bonds of the State delivered to the company.

As the language descriptive of the property to be mortgaged, as found in the statute, is found identically in the reciting part of the mortgage and in its granting clause, and as this question is to be decided by a construction of that language, it will be given here *verbatim* from the mortgage deed :

"EXHIBIT 'C' to original bill."

"This instrument of mortgage, made this second day of March, in the year eighteen hundred and seventy, by and between the Alabama and Chattanooga Railroad Company, a corporation of the States of Alabama, Georgia, Mississippi, and Tennessee, the party of the first part, and the State of Alabama, the party of the second part, witnesseth : That whereas said State of Alabama, by an act entitled 'An Act to loan the credit of the State of Alabama to the Alabama and Chattanooga Railroad Company, for the purpose of expediting the

construction of the railroad of said company within the State
of Alabama,' and approved February 11th, 1870, has granted
certain aid to said corporation, and has in and by said act re-
quired the governor of said State to issue bonds of said State
to an amount not exceeding two millions of dollars in favor of
said company, bearing interest at a rate not — eight per cent.
per annum, which said interest shall be payable semi-annually
in currency or coin, and the bonds shall be payable at the ex-
piration of not less than fifteen nor more than thirty years
upon the terms and conditions in said act set forth; and
whereas said act further provides that the governor of the
State shall only issue said bonds upon receiving in exchange
therefor an equal amount of first-mortgage bonds of said rail-
road company, bearing the same rate of interest as the above-
mentioned State bonds, and secured by a first mortgage upon
the lands granted by the United States to said railroad com-
pany and upon any interest which said company now has or
may hereafter lawfully acquire in or to said lands, with this
reservation: That the said Alabama and Chattanooga Railroad
Company shall have the privilege and right of selling said
lands, or any part thereof, in accordance with the act of Con-
gress granting the same: Provided, however, that the pro-
ceeds of said sale shall be appropriated to the payment of the
aforesaid first-mortgage bonds of the said railroad company
issued to the State: Provided, further, That the governor
shall require said railroad company, before issuing to said com-
pany said bonds, to give the State of Alabama a first mort-
gage on the telegraph line and telegraph offices along the line
of said road belonging to said company; also on the machine-
shops and all other property in the State and in Georgia, Ten-
nessee, and Mississippi belonging to said company; also on all
coal mines now open or hereafter to be opened and worked
belonging to said company; also upon all iron or other
mineral lands and all iron manufacturing establishments now
in operation or hereafter to be constructed; and whereas said
Alabama and Chattanooga Railroad Company, in order to ob-
tain said State aid, proposes to issue to said State bonds of said
corporation, secured as is by said act required, and entitled

first-mortgage land bonds of the Alabama and Chattanooga Railroad Company:

"Now, therefore, the said Alabama and Chattanooga Railroad Company, in compliance with the terms and conditions of said act, and for the purpose of obtaining the aid thereby granted to this corporation, and in order to secure the punctual payment of all said first-mortgage land bonds of this corporation, does hereby grant, bargain, sell, enfeoff, release, assign, and convey unto the State of Alabama, and its successors and assigns, forever, all lands granted by the United States to and for the benefit of this company, and all the right, title, interest, and estate which said company now has, or may hereafter lawfully acquire, in or to said lands, subject to this reservation to said company, as by said act provided; that said company shall have the privilege and right of selling said lands, or any part thereof, in accordance with the act of Congress granting the same, and entitled 'An Act to renew certain grants of land to the State of Alabama,' and approved April 10th, 1869; Provided, however, That the proceeds of said sales shall be appropriated to the payment of the first-mortgage land bonds of said company to be issued to the State of Alabama, as aforesaid; also the telegraph line and telegraph offices along the line of said road, and belonging to said company; also the machine-shops and all other property in said States of Alabama, Georgia, Tennessee, and Mississippi belonging to said company; also all coal mines now open or hereafter to be opened and worked belonging to said company, and all iron or other mineral lands, and all iron-manufacturing establishments now in operation and hereafter to be constructed; saving and excepting only from said granted premises such and so much of the same as said company may have heretofore conveyed in mortgage in or by either or both of two indentures of mortgage, both made on December 19th, 1868, and covering the railroad and certain other property of said company, for a more specific description whereof reference is hereby made to said two indentures, the same having been recorded in the counties where said road is located."

It is to be observed that the land sued for is nowhere spoken

of in this record otherwise than as *land*, pure and simple, nor is there any claim that it was land granted by Congress.

Now, the mortgage deed describes *ex industriâ* the several species of lands which it conveys. The first of them, by far the most important, is "all lands granted by the United States to and for the benefit of this company, and all right, title, interest or estate which said company now has or may hereafter lawfully acquire in or to said lands." If the company had intended to grant *all its lands* within the States of Alabama, Georgia, Tennessee and Mississippi, and it must have had other lands in these States, why not have said so, instead of saying all the lands granted by the United States? It was, therefore, only this class of lands which was conveyed by this first clause of the deed. After some reservation of the right of the mortgaging company to sell these lands and appropriate the proceeds to payment of the bonds secured by the deed, the granting language proceeds, "also the telegraph line and telegraph offices along the line of said road and belonging to said company; also the machine-shops and *all other property* in said States of Alabama, Georgia, Tennessee, and Mississippi belonging to said company; also all coal mines now open or hereafter to be opened and worked belonging to said company, and all iron or other mineral lands, and all iron-manufacturing establishments now in operation and hereafter to be constructed."

While the company is thus specific in its description of the subjects of the mortgage, enumerating with great particularity its land grant from Congress, its telegraph lines and offices, its machine-shops, and its coal mines, it is quite unreasonable to suppose that the company would have been thus needlessly minute in its description of the property conveyed, enumerating with great particularity the four or five classes of property, mostly real estate, which were intended to pass, if it had also intended that the three words, "all other property," should stand for everything in the four States which the company owned, and especially all its lands.

These words, which are found neither in the beginning of the granting clause as a general phrase to be afterwards emphasized by a more minute description, nor at the end, as a

summary of what had preceded them, have their appropriate use in the precise place where they are found. We say they are there appropriate, because in conveying the telegraph offices, the machine-shops, the coal mines, the iron mines, and the manufacturing establishments, there might in them be found much property belonging to the company about which a doubt would arise whether it was a part of these offices, mines, machine-shops, and manufacturing establishments. All such doubt or ambiguity is removed by declaring that all the property of the grantors in these places, or used in any of these pursuits, is conveyed. For this purpose the phrase "all other property" is apt, and is used in the right place in a description designedly minute and elaborate. It is among its kind, *ejusdem generis*, and its purpose is answered when its use is limited to explain the other words in this immediate connection.

It is not to be denied that in a writing descriptive of property to be transferred or assigned, the more general words which include all that is intended to be conveyed are not to be frittered away by an attempt at a description of each particular thing, fairly included in the more general language. But in such case it must be apparent that the intent was to include all that could be embraced within the more general terms. If, for instance, the description of the property mortgaged had commenced by saying "all the property of the grantor, real, personal, and mixed, in the States of Alabama, Georgia, Mississippi, and Tennessee," and had then attempted to enumerate this property, but had omitted some of it, this omitted part would have passed as in *Spindler* v. *Shreve*, 111 U. S. 542, 544. So where the instrument professes "to convey all my property," or "all my estate," or "all my lands wherever situated." In all these cases referred to in *Wilson* v. *Boyce*, 92 U. S. 320, 325, there were no words to qualify the generality of this description.

In fact there were no other words of description, and their full effect must be given to them. This latter case is relied on by appellant's counsel as conclusive in the one now under consideration. In that case the bonds issued to certain railroad companies were declared to be a "first lien upon the

road and property of the several companies so receiving them," and this was held to cover the lands owned by said companies. It is obvious here the two words "*road and property*" of those companies were used as representing all the property they owned. · Nothing further in the way of description was needed or was desirable. But this form of words differs widely from the elaborate description of what is conveyed in the deed of the mortgaging company here, and the meaning also is as different. In the latter case the road, its bed, its rolling-stock, and much other property probably was *not* conveyed, and no expression is found implying that all its *lands* were conveyed. And if we limit the words "*all other property*" to what we have supposed to be their meaning, there is nothing else to imply that the company intended to mortgage all its property, of every kind and description, whether real or personal. ·

We do not believe this was intended or can be fairly implied from the language used, the minute descriptive character of which is found three times in this contract, namely, in the statute authorizing the transaction, in the preliminary recital of the mortgage deed, and in its granting clause, all of which is useless if the phrase "·all other property," · as there used, was intended to include all lands and all interest in lands in the four States through which the road passed.

The decree of the Circuit Court is

*Affirmed.*