## HILLS v. JOSEPH.

(Circuit Court of Appeals, Ninth Circuit. February 7, 1916.)

No. 2613.

1. EXEMPTIONS ⬤⟳52—PROPERTY IN LIEU OF SPECIFIC EXEMPTIONS—"OTHER PROPERTY."

Rem. & Bal. Code Wash. § 563, exempts to each householder certain cattle, provisions and fuel for such householder and family for six months, and feed for such animals for six months, provided that, if the householder shall not possess or shall not desire to retain the animals named, he may select from his property and retain other property not exceeding $250 in value. *Held* that, while the Supreme Court of Washington, applying the rule of ejusdem generis, has construed the words "other property" as not including money on hand or due the householder from a third person, a householder not possessing or not desiring to retain the enumerated animals was entitled to select in lieu thereof merchandise from his stock in trade, not exceeding the prescribed value, and was not limited to the selection of other animate property.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 40; Dec. Dig. ⬤⟳52.

For other definitions, see Words and Phrases, First and Second Series, Other.]

2. STATUTES ⬤⟳194—CONSTRUCTION—"EJUSDEM GENERIS."

The rule of "ejusdem generis" is that where special words are used, followed by words of more general import, the general words are to be limited to things of the same kind as are described by the special words, unless an intention may be found to extend their meaning.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 272; Dec. Dig. ⬤⟳194.

For other definitions, see Words and Phrases, First and Second Series, Ejusdem Generis.]

3. EXEMPTIONS ⬤⟳4—STATUTORY PROVISIONS—LIBERAL CONSTRUCTION.

Statutes creating or giving the right of exemption to a debtor are subject to the rule of liberal construction, and are generally subject to the most liberal construction which the courts can possibly give them.

[Ed. Note.—For other cases, see Exemptions, Cent. Dig. § 4; Dec. Dig. ⬤⟳4.]

Gilbert, Circuit Judge, dissenting.

Petition to Revise Order of the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

In the matter of Max Joseph, doing business as the Workmen's Clothing Store, bankrupt. On petition by S. T. Hills, trustee, to revise an order setting aside certain exempt property to the bankrupt. Affirmed.

Cassius E. Gates, of Seattle, Wash., and Louis A. Merrick, of Everett, Wash., for petitioner.

S. A. Bostwick and J. Y. Kennedy, both of Everett, Wash., for respondent.

Before GILBERT and ROSS, Circuit Judges, and RUDKIN, District Judge.

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

RUDKIN, District Judge. [1] This is a petition to revise an order of the District Court setting aside certain exempt property to a bankrupt. The question presented by the petition is one of law only, namely, the proper construction of subdivision 4 of section 563, Rem. & Bal. Code of Washington, which exempts:

"To each householder, two cows, with their calves, five swine, two stands of bees, thirty-six domestic fowls, and provisions and fuel for the comfortable maintenance of such householder and family for six months, also feed for such animals for six months: Provided, that in case such householder shall not possess or shall not desire to retain the animals above named, he may select from his property and retain other property not to exceed two hundred and fifty dollars, coin, in value."

The particular question presented under this statute is: May a householder select merchandise from his stock in trade, not exceeding $250, coin, in value, where he does not possess or does not desire to retain the animals there enumerated? The following state and federal cases are cited in support of the claim that he may not: Carter v. Davis, 6 Wash. 327, 33 Pac. 833; United States Fidelity, etc., Co. v. Hollenshead, 51 Wash. 326, 98 Pac. 749; In re Gerber, 186 Fed. 693, 108 C. C. A. 511; In re Scheier (D. C.) 188 Fed. 745; Creditors' Collection Ass'n v. Bisbee, 80 Wash. 358, 141 Pac. 886.

There seems to have been some misapprehension in later cases in the state court, as well as in the federal courts, as to what was actually determined in the case of Carter v. Davis. The principal question there decided was that the property of a debtor who leaves the state with intent to defraud his creditors is not exempt from execution or attachment under the express provisions of the state statute. Section 57, Rem. & Bal. Code. In the course of the opinion, however, the court used the following language with reference to subdivision 3 of the section now under consideration:

"The claim to this $250, in the hands of the sheriff, is manifestly unfounded in law. The section of the statute referred to authorizes the selection of 'other household goods, utensils and furniture,' and prescribes the method and by whom such property may be selected, but confers no right to retain or select other property of a different character, in lieu of that authorized to be selected and retained."

A mere reference to subdivision 3 will show why the claim to the $250 was manifestly unfounded in law, and why other property could not be selected in lieu of the household goods, utensils, and furniture. Subdivision 3 exempts:

"To each householder, one bed and bedding, and one additional bed and bedding for each additional member of the family, and other household goods and utensils and furniture not exceeding five hundred dollars, coin, in value."

It will thus be observed that subdivision 3 exempts specific property only, and allows no exemptions in lieu thereof, in case the householder does not possess or does not desire to retain the beds and bedding, household goods, utensils, and furniture. It is manifest, therefore, that the householder could not select other property, like or unlike, in lieu of the household goods, utensils and furniture, and that is what the court meant, and all it meant, when it said the house-

holder had no right to retain or select other property of a different character.

The same misapprehension has arisen over the decision in Re Scheier. The opinion in that case was written by the writer of this opinion. The court there simply held that a partner could not claim exemptions out of partnership property, and that money could not be claimed in lieu of provisions and fuel and feed for animals under subdivision 4. The reason for that ruling is obvious. Subdivision 4 exempts provisions and fuel and feed for animals, but allows no exemptions in lieu thereof in property of like kind or of a different kind. In that respect the case is similar to Carter v. Davis.

The only point decided in United States Fidelity, etc., Co. v. Hollenshead was that the exemption claim came too late. It is a significant fact, however, that while in that case the householder was claiming money in lieu of the animals enumerated in subdivision 4, there is not the slightest intimation in the opinion of the court, written by Mr. Justice Chadwick, that the claim was unfounded in law if timely made.

In In re Gerber this court held, as in the Hollenshead Case, that the claim to the personal property was not timely made under the Bankruptcy Act and the General Orders in Bankruptcy. The court, however, in the course of the opinion, quoted from Carter v. Davis, supra, and said:

"If, as the court there held, the right given by the Washington statute to select 'other household goods, utensils and furniture,' in cases provided for, was confined to other property of the same kind, and conferred no right to retain or select other property of a different character in lieu of that authorized to be selected and retained, it would seem to follow necessarily that the same construction must be given to like provisions contained in subdivision 4, § 563, Rem. & Bal. Code."

[2] We have sufficiently shown that the question of what was like property or what was not like property was not involved in the Carter Case. The above statement was therefore somewhat inaccurate as to what was decided in the Carter Case; but it was nevertheless a correct statement of the law, as appears from the recent decision of the Supreme Court in Creditors' Collection Ass'n v. Bisbee. In the latter case it was held that a householder could not claim money or a debt due from the Northern Pacific Railway Company in lieu of the animals enumerated in subdivision 4. In the course of its opinion, and as a reason for its conclusion, the court said:

"The words 'other property,' appearing in the proviso of subdivision 4, can refer only to other property of a like nature to that specifically mentioned, under a well-known rule of statutory construction. To hold that money falls within the phrase 'other property' is to do violence to the rule of ejusdem generis" (citing Carter v. Davis, In re Gerber, In re Scheier, and other cases).

That decision is of course binding upon this court to the extent that money on hand, or money due the householder from a third person, cannot be selected in lieu of the animals enumerated in subdivision 4; but it still leaves open the question as to what is property of like nature and what is the meaning of the rule of ejusdem generis as applied to this statute. The petitioner contends that the householder

may select any kind of animate property, because all the property enumerated in subdivision 4 happens to be of that class. This would no doubt be an easy solution of a rather difficult question; but we are far from convinced that the Legislature had in mind any such arbitrary or unreasonable classification as this. The exemption is granted, to householders generally, regardless of their occupation, vocation, or calling in life, and a householder is defined by section 565 as:

"(1) The husband and wife, or either; (2) every person who has residing with him or her, and under his or her care and maintenance, either—(a) his or her minor child, or the minor child of his or her deceased wife or husband; (b) a minor brother or sister, or the minor child of a deceased brother or sister; (c) a father, mother, grandfather or grandmother; (d) the father, mother, grandfather or grandmother of deceased husband or wife; (e) an unmarried sister, or any other of the relatives mentioned in this section who has attained the age of majority, and are unable to take care of or support themselves."

And notwithstanding the fact that the exemption is thus given in general terms and without qualification to all householders, it is safe to say that not one householder in ten can derive any benefit from the statute if construed as contended for by the petitioner. Nor does a proper application of the rule of ejusdem generis lead to any such conclusion. That rule is:

"That where special words are used, followed by words of more general import, the general words are to be limited to things of the same kind as are described by the special words, unless an intention may be found to extend their meaning." 18 Cyc. 1381.

In this statute there is found a manifest intention on the part of the Legislature to extend the meaning of the special words, because the statute expressly provides that if:

"The householder shall not possess, or shall not desire to retain the animals ' above named, he may select *from his property* and retain other property not to exceed two hundred and fifty dollars coin, in value."

This provision shows very clearly that the Legislature did not intend to limit the rights of the householder by any procrustean rule, for what would it avail him to surrender specific animals if he was required to select other animals of like kind. Furthermore, the particular property enumerated in this statute is itself so diversified that any strict application of the rule of ejusdem generis would seem to be out of the question. What property can be said to be of like kind as cows and their calves, swine, bees, and domestic fowl? The petitioner would divide property into things animate and things inanimate, and asks us to hold that all animate property falls within the rule and all other property without; but we are satisfied that any such construction would do violence to the legislative intent. That body had in mind the unfortunate debtor rather than any particular kind or class of property. It is of little moment to the creditor what kind of property is claimed as exempt, provided its value does not exceed the statutory limit, while some latitude in the choice or selection is indispensable to the debtor if he is to derive any benefit from the statute: First, to enable him to make the selection from property which he may own; and, second, to select such property as will best contribute to the support and comfort of himself and family.

[3] We are satisfied this liberty of choice was contemplated by the Legislature. The rule of construction applicable to exemption statutes is the most liberal known to the law. As said in 18 Cyc. at page 1380:

"By all but universal rule the statutes which create or give the right of exemption to a debtor are held subject to the rule of liberal construction. Indeed, it would be more proper to say that they are generally subject to the most liberal construction which the courts can possibly give them, the courts taking the ground that, since the statutes have a beneficial object, their first duty is to see that this object is accomplished."

Such is the rule adopted by the Supreme Court of the state of Washington in numerous cases: Mikkleson v. Parker, 3 Wash. T. 527, 19 Pac. 31; Dennis v. Kass & Co., 11 Wash. 353, 39 Pac. 656, 48 Am. St. Rep. 880; Puget Sound Dressed Beef & Packing Co. v. Jeffs, 11 Wash. 466, 39 Pac. 962, 27 L. R. A. 808, 48 Am. St. Rep. 885; Becher v. Shaw, 44 Wash. 166, 87 Pac. 71, 120 Am. St. Rep. 982; Northern Pac. Loan & Trust Co. v. Bennett, 49 Wash. 34, 94 Pac. 664; State ex rel. McKee v. McNeill, 58 Wash. 47, 107 Pac. 1028, 137 Am. St. Rep. 1038.

Construing the statute thus liberally, we are satisfied that the ruling of the court below is well within the spirit and purpose of the law, and the judgment is therefore affirmed.

GILBERT, Circuit Judge (dissenting). The petitioner relies upon Creditors' Collection Ass'n v. Bisbee, 80 Wash. 358, 141 Pac. 886, In re Gerber, 186 Fed. 693, 108 C. C. A. 511, In re Scheier et al. (D. C.) 188 Fed. 745, and Carter v. Davis, 6 Wash. 327, 33 Pac. 833. The majority of the court are of the opinion that the precise question here involved was not adjudged in any of those decisions; that the decision of the Supreme Court of the state in the Bisbee Case went no further than to hold that money could not be claimed exempt as "other property," in lieu of the particular property named in subdivision 4; and that the language of that subdivision is plain and unambiguous, and affords no room for the application of the rule of ejusdem generis. It is true that in the Bisbee Case the ultimate question was whether money was included in the term "other property," so that it might be selected in lieu thereof as exempt from execution. But the reasoning of the court was sufficiently inclusive to meet the question of the construction of the statute which is now before us. The court said:

"The words 'other property,' appearing in the proviso of subdivision 4, can refer only to other property of a like nature to that specifically mentioned, under a well-known rule of statutory construction. To hold that money falls within the phrase 'other property' is to do violence to the rule of ejusdem generis. Carter v. Davis, 6 Wash. 327 [33 Pac. 833]; In re Gerber, 186 Fed. 693 [108 C. C. A. 511]; In re Scheier (D. C.) 188 Fed. 744; Ballard v. Waller, 52 N. C. 84."

And the court quoted from the decision in Ballard v. Waller the following:

"The enumeration of particular articles, one cow and calf, etc., concluding with the words, 'and such other property," by an established rule of construction, restricts it to other property of the like kind."

In the Gerber Case a bankrupt sought to retain $250 in money in lieu of the property specified in subdivision 4. This court, after referring to the decision·in the case of Carter v. Davis, 6 Wash. 327, 33 Pac. 833, as suggestive of the proper construction of subdivision 4, although the construction of subdivision 3 only was involved in that case, said:

"If, as the court there held, the right given by the Washington statute to select 'other household goods, utensils and furniture,' in cases provided for, was confined to other property of the same kind, and conferred no right to retain or select other property of a different character in lieu of that authorized to be selected and retained, it would seem to follow necessarily that the same construction must be given to like provisions contained in subdivision 4."

Carter v. Davis, it may be admitted, is not a precedent for the decision of this case, for it involves a construction of subdivision 3, the language of which is different from that of subdivision 4.

Conceding, however, that what was said by the Supreme Court in Creditors' Collection Ass'n.v. Bisbee as to the true construction of the statute is obiter, and that the only question actually decided in that case is whether money is such "other property" as may be selected in lieu of the live stock designated, the language of the decision is nevertheless, I think, indicative of the construction which should be given to the statute. In that statute, subdivisions 3 and 4 make provision for exemption of two distinct classes of personal property. In subdivision 3 the householder is given the right to claim as exempt his household furniture to the value of $500. In subdivision 4 he is given the right to claim as exempt certain specified live stock, bees, and fowls. Under a familiar rule of construction the proviso authorizing him to substitute other property for the precise property so designated should be held to include like property·only, such, for instance, as horses, mules, oxen, sheep, goats, ducks, geese, or pigeons, and not to property which is entirely unlike and distinct from the property enumerated in the subdivision, such as the stock of merchandise which a householder may own. In 36 Cyc. 1120, it is said:

"The words 'other,' or 'any other,' following an enumeration of particular classes, are therefore to be read as 'other such like,' and to include only others of like kind or character."

And in 21 Am. & Eng. Enc. of Law, 1012, it is said:

"Where general words follow particular ones, the rule is to construe the former as applicable to persons or things ejusdem generis. This rule, which is sometimes called Lord Tenterden's rule, has been stated, as to the word 'other,' thus: 'Where a statute or other document enumerates several classes of persons or things, and immediately following and classed with such enumeration the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that persons or things therein comprised may be read as ejusdem generis with, and not of a quality superior to or different from, those specifically enumerated.'"

Both text-writers add the qualification, which in its application to this case I have not overlooked, that in all cases of the interpretation of written instruments the question is one of intention, and that the rule of ejusdem generis is not an inflexible rule, but is to be applied as an aid to ascertain the legislative intent.

It is said that a different intention should be imputed to the Legislature from the fact that the statute, unless the exemption is construed to include all kinds of property, will deprive more than 60 per cent. of the householders of the state of the benefit of subdivision 4. This argument is based on the assumption that it was the intention of the Legislature in enacting subdivision 4 to create a substantially uniform exemption to all householders of the state. That assumption, I submit, is absolutely groundless. The exemption statutes of the state may be searched in vain for evidence that the Legislature intended to provide for uniform or equal exemptions to all classes of persons. The contrary intention is apparent. Thus subdivision 5 allows to a farmer, in addition to all the benefits of subdivisions 3 and 4:

"One span of horses or mules, with harness, or two yoke of oxen, with yokes and chains, and one wagon; also farming utensils actually used about the farm, not exceeding in value five hundred dollars in coin; also one hundred and fifty bushels of wheat, one hundred and fifty bushels of oats or barley, fifty bushels of potatoes, ten bushels of corn, ten bushels of peas, and ten bushels of onions for seeding purposes."

Other subdivisions make various exemptions for persons engaged in certain named trades and professions, but no mention is made of persons engaged in mercantile pursuits. Subdivision 4, even as the majority of this court construe it, results in inequality of exemption. If the householder have the animals specified, he must claim them as exempt. He has no option to take other property in place of them. Again, if he selects the animals as exempt, he is allowed to claim as exempt "also feed for such animals for six months," in case he has the feed. If he has it not, he is allowed no equivalent of the value of the feed, although that value may at times be greater than the value of the animals.

Again, it must tax judicial ingenuity to discover a reason why a stock of merchandise is "such other property" and money is not. If it was the intention of the Legislature, in enacting subdivision 4, to grant to all householders a general exemption of personal property of any kind or description except money, to the value of $250, I am unable to see why the Legislature did not say so, or why pains were taken to enumerate the numbers and kinds of living animals which are mentioned as within the permitted exemption. A case in point is Brooks v. Cook, 44 Mich. 617, 7 N. W. 216, 38 Am. Rep. 282. In Alabama v. Montague, 117 U. S. 602, 6 Sup. Ct. 911, 29 L. Ed. 1000, it was said:

"While the company is thus specific in its description of the subjects of the mortgage, enumerating with great particularity its land grant from Congress, its telegraph lines and offices, its machine shops, and its coal mines, it is quite unreasonable to suppose that the company would have been thus needlessly minute in its description of the property conveyed, enumerating with great particularity the four or five classes of property, mostly real estate, which were intended to pass, if it had also intended that the three words, 'all other property,' should stand for everything in the four states which the company owned, and especially all its lands."