## GILLETT v. HUDSPETH.   (No. 1162.)

(Court of Civil Appeals of Texas. El Paso. May 5, 1921. Rehearing Denied Oct. 6, 1921.)

**1. Frauds, statute of ⊜⇒148(2)—Release of interest in land presumed in writing, where fact not alleged.**

Where the facts with reference to a release of an interest in land were pleaded generally, and it did not affirmatively appear whether the agreement was in writing, the presumption is that it was.

**2. Frauds, statute of ⊜⇒146—Statute works no change in pleadings, but establishes rule of evidence.**

The statute of frauds works no change in the pleadings, but establishes a rule of evidence.

**3. Frauds, statute of ⊜⇒56(5)—The statute applies to every agreement to alienate existing interest in land.**

The statute of frauds applies to every agreement to alienate an existing interest in land.

**4. Frauds, statute of ⊜⇒63(1)—Contract to pay attorney's fees from moneys, goods, or other property recovered in suit, held not to convey estate in lands.**

A contract to pay attorneys one-third of "all moneys, goods, chattels, or other property" recovered in a suit conveyed no present vested estate in lands, so as to invalidate a subsequent verbal release of an attorney's interest therein; lands not being specifically mentioned, and there being no evidence aliunde of such intent, and the last paragraph expressing the understanding of the parties that payment was to be "out of all moneys that may be recovered out of said suit," general words used after specific terms being limited to things of like kind and nature.

**5. Frauds, statute of ⊜⇒63(1)—Where contract to pay attorney's fees did not convey interest in lands, prior to acquisition of such interest, one could verbally waive his interest in the contract.**

Where a contract to pay attorney's fees from property recovered in a suit did not convey an interest in lands, a partner of the attorney executing such contract could, prior to the subsequent acquisition of lands in payment of such fees, waive his interest in the contract by a verbal agreement, or abandon such interest by repudiating the contract and failing to perform his part.

**6. Attorney and client ⊜⇒30—Attorney, by repudiating his part of agreement, held to have waived interest in land acquired by his partners.**

In action by attorney to recover an interest in land acquired by a former partner under a contract for the payment of fees from moneys, goods, and other property recovered in a suit, facts held to show that plaintiff repudiated and refused to perform his part of the contract, so that he waived or abandoned such interest.

**7. Attorney and client ⊜⇒30—Attorney held estopped to claim interest in land acquired under contract for payment of attorney's fees.**

Even if a contract for the payment of attorney's fees from moneys, goods, and other property recovered in a suit conveyed an existing interest in lands so recovered, a partner of the attorney executing such contract, who, declaring he had no faith in the client's claim, refused to take part in the prosecution of the suit, and expressly declared he would take no share in the fee to be earned, was estopped to assert any interest in lands subsequently acquired in payment of such fees.

**8. Attorney and client ⊜⇒30—Whether attorney authorized partner to manage litigation properly submitted to jury.**

In an action by an attorney to recover from a former partner an interest in land acquired as fees under a contract with a client, the court did not err in submitting to the jury questions as to whether plaintiff authorized defendant to manage the litigation; they being material on the question of whether defendant's expenditures were properly chargeable against the partnership.

**9. Attorney and client ⊜⇒30—Evidence of expenditures in prosecution of litigation held admissible in action by former partner to recover interest in fees.**

In an action by an attorney against a former partner to recover an interest in lands acquired under a contract with a client for the payment of attorney's fees from moneys, goods, and other property recovered in a suit, evidence of expenditures incurred by defendant in prosecuting such suit were admissible; they being proper credits in case it was held the contract conveyed an interest in lands and that plaintiff was not estopped to assert his claim.

Appeal from District Court, El Paso County; W. D. Howe, Judge.

Action by J. A. Gillett against C. B. Hudspeth and another. Judgment for defendant Hudspeth, and plaintiff appeals. Affirmed, and motion for rehearing overruled.

F. G. Morris, of El Paso, for appellant.

A. J. Harper, Geo. E. Wallace, A. H. Culwell, and Jos. M. Nealon, all of El Paso, for appellee.

HARPER, C. J. This suit was instituted by appellant against C. B. Hudspeth and L. A. Dale for a partnership accounting. Specifically, plaintiff seeks to recover a half interest in certain land which he alleges was acquired by Hudspeth as fees under and by virtue of two contracts made with Mary Luna Jackson, for herself and her daughter Fannie, during the existence of the law partnership: (1) Representing the latter as a claimant for a half interest in the estate of E. R. Jackson, and as common-law wife: (2) Representing Fannie Jackson in the recovery of an interest in same estate. It was

alleged that the contracts were entered into during the partnership, prosecuted in part after the partnership had been dissolved, and that there were no debts existing against the firm, except those owing to Hudspeth for advancements made by him as expenses of litigation, etc., which should be ascertained and refunded, and after such refund plaintiff asked judgment for one-half of the value of the lands received by virtue of said fee contracts.

Defendant Dale was made party, that he might be precluded by the judgment. He disclaimed any interest. Hudspeth answered by: (1) General denial. (2) Pleaded settlement of all partnership business of the firm of Gillett, Hudspeth & Dale October 12, 1912. (3) By third paragraph in answer admitted that he entered into the contract described, first, with Mary Luna Jackson January 1, 1912; second, with Fannie Jackson April 7, 1912, "and that defendant and W. C. Linden and Jerome Shield, as a condition of such employment the contract contemplated and provided for and they agreed with Mary Luna Jackson to pay all the expenses of contesting the will of E. R. Jackson, deceased, and to advance to Mary Luna Jackson sufficient money to pay all living expenses, and defendant intended at said time that plaintiff should have a share in the fruits of such employment, provided plaintiff would pay one-half of the expense of the litigation, advance a portion of the expenses of Mary Luna Jackson, and assist in conducting the litigation; that in order to realize anything in the litigation it would be necessary for Mary Luna Jackson to establish that at the time of his death she was the common-law wife of E. R. Jackson; that shortly thereafter, while plaintiff and defendant were returning from Austin, where they had been engaged in other business, they stopped at San Antonio and had a conference with the attorneys for other claimants, whose interests were adverse to those of Mary Luna Jackson, and who furnished to plaintiff and defendant a memorandum of evidence they claimed to have to show that Mary Luna Jackson was not the common-law wife of E. R. Jackson, and therefore entitled to no interest in his estate; that after receiving this information defendant requested plaintiff to go with him to Sonora, Tex., to assist in the trial of the will contest of E. R. Jackson, deceased, but plaintiff informed defendant that, in view of the information received at San Antonio, he had no faith in the claims of Mary Luna Jackson, or Mary Luna, to any portion of the estate of E. R. Jackson, deceased, and that he was unable and unwilling either to pay any portion of the expense of contesting said will, or any portion of the living expense of Mary Luna Jackson pending such litigation, and that, if defendant desired to conduct said litigation, he could do so in his own behalf and at his own expense, and that plaintiff would not assist him in any way; that defendant then agreed that he (defendant) would conduct said litigation, and would himself pay such expenses, and plaintiff then and there agreed by his acts, or by his words, acts, and conduct led defendant to believe, that if defendant would do so anything realized from said litigation would be the property of defendant, and, acting under such agreement with plaintiff, defendant did advance Mary Luna Jackson her living expenses during the pendency of such litigation, and paid all expenses incurred in the contest of said will, and did conduct said litigation and ancillary litigation —this portion of defendant's pleading being to the effect that plaintiff repudiated defendant's act in entering into said contract with Mary Luna Jackson, and that plaintiff abandoned said case and repudiated it, and effected as to said piece of business a dissolution of the partnership and an accounting and partition, by which defendant was to and did assume all liability incurred by the making of said contract in consideration of receiving all benefits that might accrue from said contract." (4) Sets up specific instance of plaintiff's refusal to assist or participate in the defense or prosecution of the claims. (5) Sets up compromise with the Catholic Church, a legatee, in which he and others personally bound themselves to pay $225,000, and plaintiff's refusal to assume any obligation when apprised of the proposed compromise, and alleged that plaintiff further informed him that he would not claim any interest in anything realized by the contest of the said will, thus setting up plea of abandonment by plaintiff. The balance of the answer is devoted to an enumeration of expenses incurred and moneys spent in paying of the compromise debt, etc., which he alleges would not have been done, but for the fact that plaintiff by his acts as enumerated led him to believe that he would claim no interest in property acquired, by way of estoppel.

Plaintiff, by supplemental petition, demurred and specially excepted to the sufficiency of the verbal agreement to release an existing interest in lands, claimed the protection of the statute of frauds, and specifically denied the alleged agreement to release his interest in the one-eighteenth fee interest to be obtained.

Tried to a jury, submitted upon special issues, and upon the answers judgment was entered for defendant, from which plaintiff has appealed.

First assignment:

"The court erred in overruling plaintiff's demurrer to paragraph 3 of defendant's third amended original answer, wherein a verbal release of plaintiff's interest in real estate was pleaded."

[1] It will be noted, from the copy of third paragraph above, that the facts with reference to a release are pleaded generally, and it does not affirmatively appear whether the agreement set up was in writing or not, Therefore the presumption is that it (the contract) was in writing. Anderson v. Bank, 191 S. W. 836; Graham v. Kesseler, 192 S. W. 299.

[2] This statute works no change in the pleadings, but establishes a rule of evidence. Robb v. Railway, 82 Tex. 392, 18 S. W. 707; Cross v. Everts, 28 Tex. 523.

The second is that it was error to permit witness to testify over plaintiff's objections that the release was oral. If we are correct in the holdings hereafter upon the questions, it was not error to admit the testimony over objections.

The third:

"The court erred in submitting to the jury special issue No. 1 in the charge of the court, over objections of plaintiff, because it appeared from defendant's pleading that the alleged agreement of plaintiff to release or disclaim all interest in the fees in land obtained from the Jackson estate, and from defendant's own testimony, as a witness for himself, that said agreement was a verbal agreement to release an interest in real estate, when the plaintiff had invoked the statute of frauds by demurrer, plea, exception to the evidence, and by objection in writing to the submission to the jury of the issue as to the existence of said verbal agreement."

Issue No. 1 reads:

"Do you find from the preponderance of the evidence that the plaintiff, Gillett, agreed with the defendant Hudspeth at any time prior to the settlement with the Cardinals of the Roman Catholic Church in America that he would claim no further interest in the estate of E. R. Jackson, deceased, or any proceeds therefrom?"

The jury answered, "Yes."

The fourth charges error in overruling plaintiff's demurrer to defendant's plea of estoppel of plaintiff to avail himself of the statute of frauds. The fifth and sixth urge that it was error for the court to submit issues Nos. 2 and 3, in that said issues, when taken together, as intended by the court, presented an immaterial issue, in that the facts upon which they sought a finding were not sufficient, when found for the defendant, to take the verbal alleged release of an interest in real estate out of the statute of frauds.

Issues 2 and 3 read:

"(2) Do you find from the preponderance of the evidence that the plaintiff, Gillett, by his words or actions, or either, or both, reasonably caused the defendant Hudspeth to believe that he would claim no interest in the E. R. Jackson estate, or in any proceeds thereof which might be received by the said Hudspeth, or by the firm of Gillett & Hudspeth?

"If you have answered the last preceding question in the affirmative, then answer the following question:

"(3) Do you find from the preponderance of the evidence that the defendant Hudspeth was thereby induced and caused to assume financial obligations or to incur risks of financial loss?"

The jury answered "Yes" to each of said questions.

The contract which is made the basis of this suit in substance is:

"Know all men by these presents, that I, Mary Luna Jackson, party of the first part, * * * being desirous of securing my legal rights and my lawful interest into and in the estate of * * * E. R. Jackson, deceased, * * * for and in consideration of the legal services now rendered by C. B. Hudspeth and W. C. Linden, attorneys at law, * * * parties of second part. I hereby constitute and appoint the said parties of the second part * * * my true and lawful attorneys to enter suit and prosecute in my name a suit for the recovery of my interest in all property whatsoever and wherever owned and claimed * * * by E. R. Jackson, deceased, to sign my name to all papers necessary in the prosecution of said suit for said property in my behalf, and to act for me and in my stead in all matters wherein it may be necessary and wherein I may be qualified to act, and I hereby obligate myself to pay the said parties of the second part one-third of all moneys, goods, chattels, or other property that may be recovered out of said suit in my behalf into and for my interest in any property owned or claimed by Jackson, deceased."

"It is further understood that the parties of the second part hereby agree to pay all expenses that they shall incur in the bringing of this suit, * * * and hold the party of the first part blameless of any expenses. * * * It is further understood that for and in consideration of the one-third to be paid by party of the first part out of all moneys that may be recovered out of said suit parties of the second part agree to prosecute said suit to final determination, unless same shall be compromised in or out of court."

[3] The statute of frauds applies to every agreement by which one promises to alienate an existing interest in land. So, if the foregoing contract conveyed an interest in lands to Hudspeth whilst he was in the partnership, and Gillett could not waive or abandon his partnership interest, except in writing, then appellant's contentions are well founded. Sprague v. Haines, 68 Tex. 215, 4 S. W. 371.

[4] The writing above does not obligate Mary Luna Jackson to convey lands, or any interest therein, unless the words "other property," in the sentence, "I hereby obligate myself to pay * * * one-third of all moneys, goods, chattels, or other property," should be so construed. Land is not mentioned, and by the last paragraph of the contract the parties have placed their own construction upon it by the expression, "one-

third to be paid by party of the first part out of all moneys that may be recovered out of said suit." A rule of construction of contracts is that, "when general words are used after specific terms, the general words will be limited in their meaning to things of like kind and nature with those specified." Farmers' & Merchants' Nat. Bank v. Hanks, 104 Tex. 320, 137 S. W. 1120, Ann. Cas. 1914B, 368. Alabama v. Montague, 117 U. S. 602, 6 Sup. Ct. 911, 29 L. Ed. 1000; Hills v. Joseph, 229 Fed. 865, 144 C. C. A. 147; First Nat. Bank v. Adam, 138 Ill. 483, 28 N. E. 955–957; White v. Ivey, 34 Ga. 186, at 199; State v. Black, 75 Wis. 490, 44 N. W. 635; Livermore v. Board of Freeholders, 29 N. J. Law, 245–247; Remick v. Boyd, 99 Pa. 555, 44 Am. Rep. 124.

The doctrine of ejusdem generis applies in the construction of this contract. The writing itself does not mention lands; so, if it was intended by the parties to convey an interest in a vested estate by it, the intention of the parties to this effect should have been established by evidence aliunde the writing, and we find no evidence as to the intention of the parties outside of the writing, so, following the rule of construction invoked by appellee, no present vested estate in lands was conveyed thereby. Elliott on contracts, 1531.

[5, 6] So, if the contract does not specifically convey an interest in lands then existing in Mary Luna Jackson, Gillett acquired no interest by virtue thereof, therefore had none to convey, waive, or abandon by parol agreement, nor by acts of abandonment or estoppel. So, if the writing does not bind Mary Luna Jackson to convey an interest in land in consideration of the legal services of Gillett & Hudspeth, the only way he (Gillett) could have acquired an interest was by reason of the fact that an interest came to him by performance of the contract, either by the partners acting together, or by reason of the fact that Hudspeth, as a part of his partnership's obligation, performed the services, and as a consequence of such services an interest was acquired and vested in him (Hudspeth) in trust for both. Of course, in the latter case, Gillett could have, before the interest was acquired, waived his interest by parol agreement, or have abandoned any interest by repudiating the contract and failing to perform his part. The pleading, proof, and verdict of the jury are all sufficient to support the judgment in this respect.

[7] But, conceding that the contract in writing of Mary Luna Jackson, above quoted, conveys an existing interest in lands to be recovered, the courts recognize that in settlement of partnership affairs, if not in fact in cases of parol agreement between parties other than partnerships, the facts pleaded and admitted to be true by stipulation in this case are sufficient to authorize a court of equity to hold Gillett estopped to assert any interest in the property so acquired. Sanger v. Slayden, 7 Tex. Civ. App. 605, 26 S. W. 847, 852; Denver v. Roane, 99 U. S. 355, 25 L. Ed. 476; Kirk v. Hamilton, 102 U. S. 79, 26 L. Ed. 79, 82 (2d col.); Dickerson v. Colgrove 100 U. S. 578, 25 L. Ed. 618; Rowson v. McKinney, 157 S. W. 271; Whaley v. McDonald, 194 S. W. 409; Phœnix Land Co v. Exall, 159 S. W. 474.

The following language from the Supreme Court of the United States in Denver v. Roane, supra, is peculiarly applicable to the facts here:

"By the agreement of copartnership he had undertaken to share in the labor and to promote the common interest of the firm, and that was the foundation of his right to share in its earnings. It may be that the mere neglect of his duty would not have extinguished that right, but a repudiation of his obligations, refusing to act as a partner, * * * is quite a different thing. It may well be considered as a repudiation of the partnership."

In the instant case Gillett declared that he had no faith in the client's claim, refused to take any part in the prosecution of the suit, and expressly declared that he would take no share in the fee to be earned.

The seventh, eighth, and ninth urge that it was error to refuse to render judgment for appellant for one-half of the fee under the Fannie Jackson contract. This contract was for a definite money fee, and antedated or preceded the declarations next above on the part of the plaintiff, and the pleadings and evidence are such that appellant's right to an interest in this fee is ruled by the holdings with reference to the Mary Luna Jackson fee.

[8] By the tenth and eleventh it is urged that it was error for the court to submit the following questions:

"Do you find from the preponderance of the evidence that the plaintiff, Gillett, by his words or actions, or either or both, authorized Hudspeth to manage whatever interest in the Jackson estate as a result of the employment?"

—and the fifth virtually the same. These assignments are not followed by propositions, but it is suggested that the questions submitted immaterial issues. They are material upon the question of whether expenditures by Hudspeth were properly chargeable against the partnership, and as to these items we find as follows:

[9] By many other assignments it is urged that it was error to admit evidence of each of numerous items of expenditures set up by appellee, by his answer that, if Gillett should recover an interest in the land, then, in that event, such interest should be offset by one-half of such expenditures, and other assignments and propositions charge error in submitting these items to the jury because,

it is claimed, they are not proper items of expense against the partnership assets.

The holdings above necessarily call for an affirmance of the trial court's judgment, and therefore render it unnecessary for this court to pass upon these assignments; but appellant having specifically urged us, in view of a possible application for a writ of error to the Supreme Court, to pass upon all assignments in his brief, we have reviewed the questions raised and have reached the conclusion that they are without merit, in that the items of expenditure pleaded, and for which there is an affirmative finding for appellee, are proper lawful offsets and credits which should be allowed, if it should be held that the contracts conveyed an interest in lands, and that Gillett, under the facts, is not estopped to assert any interest therein. Therefore these assignments are all overruled, without giving in detail our reasons in each case.

Affirmed.

On Motion for Rehearing and Motion to Correct Statements and Findings of Fact.

The portion of the opinion quoted:

"Of course, in the latter case, Gillett could have, before the interest was acquired, waived his interest by parol agreement, or have abandoned any interest by repudiating the contract and failing to perform his part. The pleadings, proof, and verdict of the jury are all sufficient to support the judgment in this respect"

—was first a conclusion of law that the written contract with Mary Luna Jackson did not in fact provide for payment of any part of the fee, for representing her, in lands, and we think a proper conclusion.

It is next urged that the statement that the pleading, evidence, and verdict as to the waiver, being before any interest accrued, is incorrect. The opinion up to that point makes no statement as to where the waiver took place, but simply declares that under the law applicable to the pleadings and facts Gillett could waive his interest in the Mary Luna Jackson fee, because there were no pleadings or evidence that Hudspeth and Gillett as a partnership had a contract in writing providing for a conveyance of land in payment of any portion of the fee; therefore, under such state of fact, he could by parol agreement before the interest was acquired waive such interest by repudiating and abandoning the contract. The evidence shows that Gillett, immediately upon seeing the contract with Mary Luna Jackson, repudiated it, because it provided that the attorneys should pay her personal expenses pending the litigation. Again, the evidence shows that, as pleaded, he repudiated after the conference with the attorneys for the Catholic Church at San Antonio, and again when the final compromise agreement with the proponent of the will was presented to him.

As to the proposition that the seventh assignment does not treat of the Fannie Jackson fee, the second proposition thereunder speaks of the "Jackson estate fees." We took this to be applicable to both fees. The other propositions thereunder are answered by other parts of the opinion.

As to the third matter urged in the motion to correct the findings, that the Fannie Jackson contract antedated the repudiation, this contract is dated April 7, 1912, but recites that it had theretofore been entered into, and Hudspeth testified that after compromise with the Cardinals of the Catholic Church, in which they agreed to pay the $100,000 Fannie Jackson fee, Gillett refused to sign, and again asserted that he would have no interest in the fee (pages 95 and 96, S. F.). Again (on page 108, S. F.) Hudspeth says:

"For looking after the Fannie Jackson interest I was required to take this fee in land at $4.50 per acre before the compromise agreement and partition"

—and hence before the last assertion of Gillett that he would take no interest, thus clearly showing that the contract antedated the declarations of repudiation, and according to the record the most of the work in the case, to finally acquire such interest as Hudspeth now has, which Gillett seeks to divide, was done after the date of the writing, and there is no evidence in this record that Gillett performed any services as a partner in the prosecution of the suits, etc., whereby the property as a fee was finally acquired.

Overruled.