# Walter H. Hawkins et al. v. Great Western R. R. Co.

*Common Carriers: Contracts against negligence: Live stock.* A contract for the carriage of live stock which exempts a railroad company from responsibility for losses and damages "in loading, unloading, conveyance and otherwise," whether arising from negligence, misconduct or otherwise, does not exempt them from the necessity of furnishing suitable cars; and the exemptions must be confined to risks in the use of the proper means of transportation which every one is entitled to assume are possessed by a carrying company.

General words of exemption, when used after a designation of specific exemptions and risks, will be presumed to include only those of a similar character, unless a different intention is manifest.

Where, under such a contract, there was nothing to show that the shipper assented to the use of the cars on which his stock was shipped, with adequate means of observation as to their fitness, he was held entitled to expect that the cars used should be reasonably suitable for the business, and to recover for losses if caused by their unfitness.

*Heard April 25th. Decided April 28th.*

Error to Wayne Circuit.

This was an action brought against the defendant as carriers to recover damages for an alleged injury to certain horses while in transit on their road.

The plea was the general issue.

The injury resulted from a defect in the floor of the cars, by means of which the bottom dropped out, and the horses were injured.

On the trial, the defendant's counsel introduced in evidence, under objection, a shipping bill, signed by the plaintiffs, containing, among other conditions, that

"The owner of the within-mentioned animals undertakes all risk of loss, injury, damage and other contingencies in loading, unloading,

17 MICH. — E.

conveyance and otherwise, whether arising from the negligence, default or misconduct, gross or culpable, or otherwise, on the part of the Railway Company's servants, agents or officers.

"When free passes are given to persons in charge of animals, or to their owners, or to the consignees named on the way bills, or either of them, it is only on the express condition that the railway company are not responsible for any negligence, default or misconduct, gross, culpable or otherwise, on the part of the company or their servants, or of any other person or persons whomsoever, causing, or tending to cause, the death, injury or detention of persons with such free passes, or of such animals, and that whether such passes are used in traveling by any regular passenger train, or by any other train whatever."

The defendant's counsel also introduced in evidence, under objection, a free pass delivered to plaintiffs, and signed by them, containing the substance of the foregoing conditions.

There was some evidence tending to show that the defendants did not examine the cars in which the said horses were placed immediately previous to their shipment.

The court charged the jury that said shipping bill and passes constituted a special contract, and that the plaintiffs were bound by the conditions on the back of said passes and shipping bill; that by the terms of said special contract the defendant was exempted from the use of ordinary care, and also from liability for gross negligence in the transportation of the stock of the plaintiffs.

The jury, under said charge, brought in a verdict for defendants.

The following, amongst other errors, was assigned:

"That the court instructed the jury that said shipping bill and passes constituted a special contract, and that the plaintiffs were bound by the conditions on back of said passes and shipping bill; that by the terms of said special contract the defendant was exempted from the use of ordinary care, and also from liability for gross negligence in the transportation of the stock of the plaintiffs."

*Moore & Griffin,* for plaintiffs in error.

The court below instructed the jury that the special contract exempted the defendant from liability for gross negligence.

The testimony shows that this negligence consisted in not providing suitable cars.

The terms of the contract are not sufficiently clear and explicit, and are not intended to cover this defect; they are "All risks of loss, injury, damage and other contingencies, in loading, unloading, conveyance and otherwise."

This contract is carefully framed, and language used with reference to the carrying of live stock.

Many of the risks attendant upon the transportation of live stock are such as do not exist as to merchandise.

The word "conveyance," we think, has reference to many of those risks which are peculiar to the transportation of live stock, and which commence after the transportation begins.

This same injury, in all probability, would have happened had the car remained stationary.

"Risk of conveyance" does not reach this injury.

Every exception of risk must be contained in the contract itself, in express terms. No implication will be made in favor of the carrier. — *Angell on Car.* § *226, a.*

But if it be said that the word "conveyance" is broad enough to cover all risks accruing after the loading, and that this particular injury would not have happened were it not for the kicking and movement of the animals; and that this is one of the very risks incident to the carriage of live stock, and intended to be reached by the terms of the contract, we reply,

The carrier undertook to carry live stock, and not merchandise.

There is an implied warranty that a carrier undertaking to furnish vehicles for a certain purpose will provide suitable ones. — *5 East. 428; 6 How. 382; 14 Barb. 524; 29 Id.*

*132, 602 ; 26 Id. 641; 5 Sandf. 180 ; 7 Hill, 533 ; 4 Seld. 375 ; 24 N. Y. 222, 181, 1197 ; 25 Id. 442.*

The question of permitting a common carrier to exempt himself, by special contract, from liability for gross negligence, has been presented to the highest courts of judicature of several states, and the doctrine rejected.—*30 Penn. State, 242 ; Amer. Law Reg. Jan. '68, 172 ; 19 Ill. 136 ; 38 Id. 354; 15 La. An. 103 ; 4 Ohio, St. 362; 10 St. 65; 31 Me. 228 ; 28 N. J. 180 ; 4 Hurl. & Nor. 327 ; 2 Redf. on Rail. 82–98 ; 3 Pars. on Cont. 247.*

*Wm. Gray* and *L. Cochrane,* for defendant in error.

The first count in the plaintiffs' declaration alleges that the defendant received the horses to be by it " safely and securely carried and conveyed," etc. This is the legal effect of the contract imposed upon the railway company, in the absence of any special agreement. The second count states that the defendant, as such " common carrier as aforesaid," *i. e.* " as a common carrier of goods and chattels for hire, to wit, from Paris, in the Province of Canada, to the city of Detroit," etc. had the care and custody of certain horses for a certain hire and reasonable reward. Notwithstanding this count does not allege that the property was received for the purposes of carriage, it will be presumed that such was the object. Upon this presumption the law conclusively raises a second, that the horses were to be " safely and securely" carried, unless the latter is rebutted by evidence that such was not the contract. To carry safely and securely is the *gravamen* of the obligation imposed upon the railroad. The special contract offered by the defendant directly negatives the positive allegations and necessary implications of the plaintiffs' declaration.—*13 Q. B. 345, 352.*

We submit, therefore, that it was properly introduced under the general issue.

There is no doubt special contracts may be made by common carriers with consignors, to relieve the former from

the responsibility which the law has imposed upon them. *6 Mich. 243, 263.*

The court will assume that the defendant paid, and the plaintiffs received, a consideration for the release here claimed. *16 Mich. 79.*

The form used in this case does not differ substantially from that formerly used by the English railways for the same purpose. — *13 Q. B. 345, 348; 10 C. B. 453, 463; 7 Excheq. 707.*

In the case before this court the sole substantial difference is that this contract is more specific than the English contracts. — *4 Hurl. & Nor. 327.*

Gross negligence is in many of the works spoken of as fraud. But in numerous instances it is entirely consistent with good faith. — *Edw. on Bail. 71.*

While we do not contend that a carrier may contract for a right to commit a fraud upon his employers, we do maintain that the latter may insure against the negligence, even gross, of the former, when unaccompanied by fraud; that consequently, before the latter can call upon the defendant to exonerate himself, he must show such a state of affairs as would raise at least a presumption of fraud actually committed, and intended to be committed.

In this case nothing of the kind appears.

CAMPBELL J.

Plaintiff shipped certain horses over the railway of the defendants, under a contract which provided that the owners took all risks of loss, injury, damage, and other contingencies "in loading, unloading, conveyance, and otherwise, whether arising from the negligence, default, or misconduct, gross or culpable, or otherwise, on the part of the railway company's servants, agents, or officers." The contract contained a further provision that, when free passes were given to persons in charge of animals, or to their owners or consignees, the company should not be responsible for any

negligence, default, or misconduct, gross, culpable, or otherwise, on the part of the company or their servants, or of any other person or persons, causing or tending to cause the injury or detention of the animals.

The injury in this case occurred by reason of the bottom of the carriage giving way. Whether this was caused by a defect in the carriage, or by reason of some other neglect or fault in the course of the transit, does not distinctly appear, as the court below found that the company was not liable at all under this agreement. But, from the course of the argument, we infer that defective cars caused the damage.

In *Shaw v. The York and North Midland Railway Co. 13 Q. B. 347,* under a contract which exempted the carrier from liability *"for any injury or damage (however caused),"* the court intimated a doubt whether the plaintiff might not have alleged a duty to furnish proper and sufficient carriages, and that the loss happened from a breach of that duty, notwithstanding the terms of the contract, which were fully as broad as those in the present case.

Unless some showing was made that the plaintiffs, with proper opportunities of observation and with notice of their actual condition, assented to the use of the cars on which their horses were shipped, we think they were entitled to expect that reasonably proper cars would be furnished. While there is in one clause of the contract an exception of every default, the fair inference is, that this language was used as referring to defaults in the particulars specified in the previous articles, viz: "loading, unloading, conveyance, and otherwise," and in matters of a like kind. The rule is usually applicable, that where no intention to the contrary appears, general words used after specific terms are to be confined to things *ejusdem generis* with the things previously specified. — *American Transportation Co. v. Moore, 5 Mich. 368.* We think it would not occur to any one executing such a contract, that it had reference to any risks except such as were likely to arise from the nature of the

freight, from delays, and from casualties and defaults occur-·
ring during the loading, transportation and unloading and
delivery.    It would not lead him to contemplate risks not
incident to the ordinary transaction of business, and arising
from negligence in no way likely to be incurred by a com-
pany using ordinary care in the management of its affairs.
He would fairly be led to assume that the company, pos-
sessing the usual facilities for the carrying trade, of which
cars are the first and indispensable · means, merely sought
exemption from risks incurred in the employment of those
means.

If the cars in question were unfit for the purpose to
which they were applied, and if that unfitness was of such
a character as to imply fault in the company or their
agents for allowing them to be used, we think they are re-
sponsible for the damages which accrued from their use.
As the case shows, there was evidence tending to show neg-
ligence, and as the negligence may have consisted, and is
assumed to have been, in the use of unfit cars, the case
should have gone to the jury upon this point.

The judgment should be reversed, and a new trial
granted.

Cooley Ch. J. and Graves J. concurred.

Christiancy J. did not sit.