## CLEVELAND TRUST CO. v. CONSOLIDATED GAS, ELECTRIC LIGHT & POWER CO. OF BALTIMORE, et al.

### No. 3241.

Circuit Court of Appeals, Fourth Circuit.
Jan. 12, 1932.

Gardner Abbott, of Cleveland, Ohio, and Richard F. Cleveland, of Baltimore, Md. (Semmes, Bowen & Semmes, of Baltimore, Md., and Charles E. Bodurtha and Tolles, Hogsett & Ginn, all of Cleveland, Ohio, on the brief), for appellant and cross-appellee.

Joseph France, of Baltimore, Md. (Venable, Baetjer & Howard and Hunter H. Moss, all of Baltimore, Md., on the brief), for appellees and cross-appellants, A. S. Abel Co. and Alex. Brown & Sons, and appellee Maryland Trust Co., Trustee.

Edgar Allan Poe, Jr., of Baltimore, Md. (Edgar Allan Poe and Bartlett, Poe & Claggett, all of Baltimore, Md., on the brief), for appellees and cross-appellants J. Sawyer Wilson, Jr., Guy Harrison Reese, and Abel A. Rosenburg, constituting Protective Committee for Bondholders, etc.

Charles Markell, of Baltimore, Md., for appellee and cross-appellant Consolidated Gas, Electric Light & Power Co.

Before PARKER and NORTHCOTT, Circuit Judges, and WEBB, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal and cross-appeals from a decree of the District Court of the United States for the District of Maryland, entered in July, 1931, in the suit of R. E. Duvall Company v. Washington, Baltimore & Annapolis Electric Railroad Company. The opinion of the learned judge below will be found in 51 F.(2d) 566, 567.

The statement of facts, taken from the opinion, filed in the District Court, is as follows:

"On January 27, 1931, a receiver was appointed by this court for Washington, Baltimore & Annapolis Electric Railroad Company, hereinafter called the railroad company, upon a bill of complaint filed by its creditors and upon its admission of insolvency and consent. The Cleveland Trust Company, hereinafter called the trustee, was given leave to intervene as party plaintiff in the case in order to protect the rights of bondholders holding bonds to the amount of $7,308,000, which are secured by a mortgage on the property of the railroad company dated March 1, 1911, and executed and delivered on March 31, 1911, by the railroad company to the trustee. On March 1, 1931, the railroad company defaulted in the payment of an installment of interest due on the bonds. On May 15, 1931, the trustee filed a petition in the case praying for an order directing the receiver and the railroad company to assign and deliver to it certain shares of stock of certain Maryland corporations, to wit, 39,271 shares, without par value, of the capital stock of the

Annapolis & Chesapeake Bay Power Company, hereinafter called the power company, 10 shares of the par value of $100 each of the Terminal Real Estate Company of Baltimore City, Md., hereinafter called the terminal company, and 400 shares of the par value of $50 each of the Maryland Development & Realty Company of Anne Arundel County, Md., hereinafter called the Maryland company. The shares of stock above described constitute all the outstanding stock of the respective corporations. All of the stock of the power company and all of the stock of the terminal company belong to the railroad company, and all of the stock of the Maryland company belongs to the terminal company.

"The trustee asserts that the stock is covered by terms of the mortgage whereby property owned by the railroad company at the time of the execution of the mortgage, or acquired thereafter, was made subject to its lien; and that since a receiver has been appointed for the railroad company on the ground of insolvency, and a default has been made in the payment of interest on the bonds, the trustee has become entitled to delivery and possession of the stock and to receive and hold the revenues, income, and profits therefrom under the terms of the mortgage. Answers to the petition have been filed by creditors of the railroad company, not protected by the lien of the mortgage. They point out that shares of stock are not mentioned in the grant, and contend that property of that kind is not subject to the lien of the mortgage, if that document is properly interpreted, but belongs to the railroad company, free and clear of any lien. The issue thus raised constitutes the main question to be decided in this case.

"The trustee, in support of its contention, relies upon the express terms of the granting clause of the mortgage, and particularly upon the sweeping character of the language employed in its final paragraph. The grant itself and a description of the property thereby conveyed may be summarized for our purposes as follows:

" 'The Railroad Company, party of the first part, conveys to the trustee upon the trusts created by the mortgage, *"all the right, title, interest and estate of the first party in and to the entire railroad of the party of the first part, as follows"*:

" '1. The terminal station in the City of Baltimore and its line of railroad, rights of way, privileges and rights of tracks in the City of Baltimore, beginning at a certain described point therein and extending through certain streets in the city and thence through certain counties in Maryland to the boundary line between the State of Maryland and the District of Columbia.

" '2. Also a line of single railway track extending from a point on the railroad in Anne Arundel County in an eastern direction to the City of Annapolis and a line of single track in that city.

" '3. Also all the terminals, terminal tracks, railroad facilities, engines, rolling stock, electric appliances, bridges, &c., enumerating in all 39 classes of tangible railroad property, "and all other estate, property and right of every and any kind and class now or hereafter owned or acquired or to any extent controlled or possessed by the Railroad Company belonging to or used or designed for use for or in connection with said terminal stations and said lines of railroad.

" '4. Also franchises granted to the Railroad Company by the City of Annapolis to use the streets of the city for railroad purposes.

" '5. Also franchises granted to the Railroad Company by the City of Baltimore to use the streets of the city for railroad purposes.

" '6. Also rights under three separate contracts to use the tracks of certain street railways in Baltimore and Washington, or the power thereover, and to acquire power for the operation of the railroad.

" '7. Also, all contracts, rights, revenues, rents, tolls, sums of money or income arising or to arise from the property now owned or controlled or hereafter to be acquired or controlled by the Railroad Company, and each and every part and parcel thereof, and also all corporate or other franchises, rights, easements, privileges and immunities now or at any time hereafter owned, held or enjoyed by or in any manner conferred upon the Railroad Company; it *being the intention hereof to include herein all of the property of the Railroad Company, real, personal or mixed, in possession or expectancy, now owned or hereafter in any wise acquired,* together with all and singular the tenements, hereditaments, rights, franchises, easements, privileges, immunities and appurtenances of such property and premises hereinbefore expressed to be conveyed, or which may in any manner hereafter be acquired by the Railroad Company, *belonging or in any wise appertaining to, or at any time hereafter held or enjoyed by the Railroad Company,* and the reversion and reversions, remainder and remainders, tolls, in-

comes, revenues, rents, issues and profits thereof, and also all the estate, right, title and interest, property, possession, claim and demand whatsoever, as well in equity as in law, of the Railroad Company, in and to the same and every and any part thereof; it being intended and it is hereby agreed that all the property of every kind now owned or which may be in any wise acquired by the Railroad Company shall be as fully embraced within the provisions hereof, and subject to the lien hereby created for securing the payment of all of said bonds so to be issued, together with the interest thereon, as if the said property were now owned by the Railroad Company, and were specifically described herein and conveyed hereby.'" (Italics inserted.)

The District Court has held, first, that the mortgage lien must be construed as restricted to property "for use for or in connection with said terminal stations and said lines of railroad," and, second, that so construed, the lien of the mortgagee does not cover the stock of the power company and the stock of the terminal company, but does include certain parcels of real estate held by the terminal company and the Maryland Company which are used for railroad purposes.

▮ We agree with the holding of the judge below on the first point. Conceding that, as stated in the opinion of the District Court, the language of the concluding paragraph read by itself is sufficiently broad to include investment shares of stock and that after acquired property may be mortgaged, and that the rule, as to after acquired property, applies equally to securities as to other kinds of property, yet this mortgage clearly was not intended to cover after acquired property other than that used in connection with the railroad and its operation.

Questions of a character similar to the one arising here are not novel, and have frequently been considered by the appellate courts. A large number of them has been examined, and from them we conclude that the great weight of authority supports the conclusion of the judge below.[1]

▮ The great weight of authority sustains the rule of strict construction in interpreting "after acquired property" clauses in a mortgage. To use the words of the court, in the case of Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637, the terms employed in describing the property mortgaged must "imperatively demand" the construction contended for. Neither the reading of the mortgage as a whole, as it must be read, nor the conditions surrounding the giving and execution of the mortgage, lead to the conclusion that the stock of any of the companies was intended to be covered by the mortgage. This is especially true of the stock in the power company. This stock was simply an investment of the railroad company, and was so carried in the books of that company. The operation of the power company was in no way connected with or essential to the operation of the interurban railroad.

As is convincingly reasoned by the judge below in his opinion, the introductory paragraph of the granting clause manifests an intention to grant and convey complete title to its entire railroad, but purports to convey no other property. In the long description by items of the property set out in the mortgage

[1] The following cases deal with various phases of the interpretation of "after acquired property" clauses in mortgages: United States Mortgage & Trust Co. v. Chicago & A. R. Co. (C. C. A.) 40 F. (2d) 386; Smith v. McCullough, 104 U. S. 25, 26 L. Ed. 637; Alabama v. Montague, 117 U. S. 602, 6 S. Ct. 911, 29 L. Ed. 1000; Humphreys v. McKissock, 140 U. S. 304, 11 S. Ct. 779, 35 L. Ed. 473; United States v. Delaware & Hudson Co., 213 U. S. 366, 29 S. Ct. 527, 53 L. Ed. 836; Pierce v. National Bank of Commerce (C. C. A.) 13 F.(2d) 40; Majestic Co. v. Orpheum Circuit, Inc. (C. C. A.) 21 F.(2d) 720; Guaranty Trust Co. v. Atlantic Coast Electric R. Co. (C. C. A.) 138 F. 517; Westinghouse Electric & Manufacturing Co. v. Brooklyn R. T. Co. (D. C.)

288 F. 221; Central Trust Co. v. Denver & R. G. R. Co. (C. C. A.) 219 F. 110; Westinghouse Electric & Manufacturing Co. v. Brooklyn R. T. Co. (C. C. A.) 263 F. 532; Guaranty Trust Co. of New York v. Minneapolis & St. L. R. Co. (C. C. A.) 36 F.(2d) 747; Holt v. Henley, 232 U. S. 637, 34 S. Ct. 459, 58 L. Ed. 767; Detroit Steel Co. v. Sisterville Brewing Co., 233 U. S. 712, 34 S. Ct. 753, 58 L. Ed. 1166; American S. S. Co. v. Wickwire Spencer Steel Co. (D. C.) 42 F.(2d) 886; Westinghouse Electric & Manufacturing Co. v. Brooklyn Rapid Transit Co. (D. C.) 276 F. 152; Mallory v. Maryland Glass Co. (C. C.) 131 F. 111; Metropolitan Trust Co. v. Chicago & E. I. R. R. Co. (C. C. A.) 253 F. 868; New York Security & Trust Co. v. Louisville, E. & St. L. Consolidated R. R. Co. (C. C.) 102 F. 382; Scudder v. Perce, 159 Cal. 429, 114 P. 571; English v. Shelby, 116 Ark. 212, 172 S. W. 817; Jewel Tea Co. v. Watkins, 26 Colo. App. 494, 145 P. 719; Hammerquist v. Swensson, 44 Ill. App. 627; Dawes v. Prentice, 16 Pick. (Mass.) 435; In re Willcox, 165 App. Div. 197, 151 N. Y. S. 141; Newport Water Works v. Taylor, 34 R. I. 478, 83 A. 833; Vaughan v. Porter, 16 Vt. 266; Richmond Ice Co. v. Crystal Ice Co., 99 Va. 239, 37 S. E. 851, 852; Adams v. Urquart (Ark.) 13 S. W. 78; Torrance v. McDougald, 12 Ga. 526; Hawkins v. Great Western Railroad, 17 Mich. 57, 97 Am. Dec. 179; First National Bank of Waterloo v. Story (Sup.) 140 N. Y. S. 31; Jones v. Island Creek Coal Co., 79 W. Va. 532, 91 S. E. 391, 392; In re Paul Delaney Co. (D. C.) 26 F.(2d) 937; Given v. Hilton, 95 U. S. 591, 24 L. Ed. 458; Lindeke v. Associates Realty Co. (C. C. A.) 146 F. 630; Hoffman v. Eastern Wisconsin Ry. & Light Co., 134 Wis. 603, 115 N. W. 383; Spindle v. Shreve, 111 U. S. 542, 4 S. Ct. 522, 28 L. Ed. 512; Sumner v. Blakslee, 59 N. H. 242, 47 Am. Rep. 196; Webb v. Missouri State Life Ins. Co., 134 Mo. App. 576, 115 S. W. 481; Butts v. Northwestern Printing & Publishing Co., 43 Minn. 56, 44 N. W. 879; American Brake Shoe & Foundry Co. v. New York Railways Co. (D. C.) 277 F. 261; Pullman's Palace Car Co. v. Missouri Pacific R. Co., 115 U. S. 587, 6 S. Ct. 194, 29 L. Ed. 499.

only property useful in the operation of the railroad is included. While the last paragraph comprises all property, it is only reasonable to conclude that all the paragraphs were intended to relate only to the same kind of property. The resolutions of the board of directors and of the stockholders, authorizing the execution of the mortgage, support this conclusion. The form of the bond uses the same language used in the resolutions of the board of directors.

It is also significant that the shares of stock in the terminal company, owned and held by the railroad at the time the mortgage was executed, were not specifically included, and while former mortgages on the property now owned by the railroad company had incorporated in them collateral trust provisions, with respect to stock or securities owned or thereafter acquired, such provisions were omitted in the mortgage under consideration.

 As was said in the opinion: "The rules established for the interpretation of written instruments do not justify the detachment of general words from accompanying expressions of an explanatory character, and often times, as in this case, a broad phrase must be construed as ejusdem generis with more limited descriptions in order to give effect to the obvious intention of the parties. Indeed it has been laid down broadly that general words in any contract pertaining to a particular subject shall be construed as meaning things of the same kind as the particular matters referred to. Williston on Contracts (1920) 1201; Smith v. McCullough, 104 U. S. 26, 28, 26 L. Ed. 637; Alabama v. Montague, 117 U. S. 602, 6 S. Ct. 911, 29 L. Ed. 1000; Guaranty Trust Co. v. Minn. & St. L. R. Co. (C. C. A.) 36 F.(2d) 747."

The language used in the mortgage, the character of its provisions, the provisions in article 23 for the sale only of railroad properties and tenor of the mortgage as a whole, lead to the conclusion that neither the stock in the power company nor the terminal company is covered by the mortgage.

As to the holding of the judge below, that the mortgage, while not covering the stock of either company, does cover certain property of the terminal company (and its subsidiary, the Maryland Development & Realty Company) used in the operation of the railroad, we do not find ourselves in agreement.

 The railroad, the power, and the terminal companies were separate entities. The fact that the entire stock in the power and

the terminal companies was owned by the railroad company does not in the least affect this fact. For a discussion of this question involving as it does the difference between a corporation and its stockholders or its sole stockholder and between shares of stock and the property of a corporation, see Davis v. Alexander, 269 U. S. 114, 46 S. Ct. 34, 70 L. Ed. 186; Joseph R. Foard Co. v. State of Maryland (C. C. A.) 219 F. 827; State of Maryland v. General Stevedoring Co. (D. C.) 213 F. 51; Baltimore Transit Co. v. Swindell, 132 Md. 274, 103 A. 566; Northern Securities Co. v. United States, 193 U. S. 197, 24 S. Ct. 436, 48 L. Ed. 679; United States v. Reading Co., 253 U. S. 26, 40 S. Ct. 425, 64 L. Ed. 760.

"Sec. 6. Disregarding the corporate entity.—The separate corporate capacity is not disregarded when just limits are placed upon the exercise of the corporate privilege, * * *

"Limits on the corporate privilege.—The basic theory of corporation law is that a corporation exists as an entity entirely separate and apart from its stockholders. There is in many cases much loose talk about 'ignoring the corporate fiction' and 'looking at the substance rather than the form.' But the corporate capacity is a legal fact, not a fiction. * * *

"* * * * If a corporation is owned and controlled by another and is manipulated by the owner for its own purposes and in its own interests to the prejudice of innocent third parties, or the public welfare, it may be necessary to limit such abuse of the corporate capacity or shield. But in the ordinary case the fact that the shares of one company all belong to another does not make the subsidiary a mere alias, or trustee or agent for the parent company or for the stockholders of the parent company."

Ballantine on Private Corporations, 26, 27, 33, 34, 36, 37.

 It is beyond the powers of the court of equity to hold that a mortgage executed by one corporation can create a lien on property owned by a separate corporation, the title to which property was never vested in the mortgagor company. The use to which the property may be put cannot alone vest such a title in the railroad company as would include it in the mortgage executed by that company. While the property of the terminal and the realty companies, held by the judge below to be within the terms of the mortgage as being used by the railroad company, was so used, yet the record shows that these properties are

not indispensable to the operation of the railroad. Moreover, the holding that these properties are covered by the mortgage works a hardship on the holders of the mortgage bonds of the Baltimore & Annapolis Short Line Railroad Company, and in that respect is unjust and inequitable. The Short Line Railroad north of Shipley was released from the lien of the Short Line mortgage as no longer necessary or desirable for use in connection with the operation of the Washington, Baltimore & Annapolis Railroad, but by the decree below became subject to the mortgage here in question because used in the operation of the railroad—an inconsistent conclusion. This holding, if allowed to stand, produces the inequitable result of giving the railroad company bondholders a prior lien, the Short Line bondholders none, on property, the legal title to which was never vested in the railroad company.

The decree below was right in that it held that the stock of the power and the terminal companies was not covered by the mortgage, but erroneous in holding any property of the terminal and realty companies to be covered by it. This suit is remanded with instructions to modify the final decree in accordance with this opinion.

Modified.