### CHASE NAT. BANK OF CITY OF NEW YORK v. RICHMOND CEDAR WORKS et al.

### No. 4235.

Circuit Court of Appeals, Fourth Circuit.

Jan. 4, 1938.

NORTHCOTT, Circuit Judge, dissenting.

———————

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

John S. Eggleston, of Richmond, Va., and Hugh L. M. Cole, of New York City (McGuire, Riely & Eggleston, of Richmond, Va., and Milbank, Tweed, Hope & Webb, and W. Crosby Roper, all of New York City, on the brief), for appellant.

Aubrey N. Heflin and Wirt P. Marks, Jr., both of Richmond, Va. (W. J. Parrish, Jr., of Richmond, Va., on the brief), for appellees.

SOPER, Circuit Judge.

Richmond Cedar Works, a Virginia corporation, being in the hands of receivers, the question has been raised whether an indenture of mortgage, executed by it on January 1, 1925, to secure an issue of bonds, covers a planing mill and a lumber yard which it established after the execution of the document. The suit was brought by the trustee under the mortgage against the corporation and the receivers to secure a decree declaring that the described property is subject to the lien.

The mortgage covered the plant of the corporation at Richmond, Va., and another plant at Camden, near Norfolk, Va., and

also certain specifically described timber lands in Virginia and North Carolina, expressly excluding, however, a tract of land in North Carolina and all Virginia lands not specifically described. The corporation owned 12,000 acres of land in Virginia not described in the mortgage, composed of farm land, cutover timber land, and rights of way. A portion of this excluded farm land subsequently became the site of the planing mill and lumber yard with which this controversy is concerned.

Immediately after the granting clause and the specific description of the mortgaged land by metes and bounds are found the following paragraphs which contain the language presented for interpretation:

"It is the intention of the Company to convey by this indenture only such lands situated in the State of Virginia as are specifically described in the granting clause hereof. It is the intention of the Company to convey by this indenture all the lands (including timber and rights to cut timber from lands not owned in fee), now owned by it in the State of North Carolina, with the exception of that tract of land generally known as the 'J. T. White and L. Vyne Tract,' situated partly in Pasquotank County and partly in Perquimans County, North Carolina, containing 7,203 acres, more or less. If any lands owned by the Company, in North Carolina, with the exception of said 'J. T. White and L. Vyne Tract' of 7,203 acres, have been omitted from the description contained herein, the same are hereby declared to be conveyed by this indenture in as ample a manner as if they had been described by metes and bounds.

"All subject to railway easements and rights of way heretofore granted and to leases and contracts of record.

"All standing or growing timber located upon any of the lands above described.

"All manufacturing plants and plants for the development or generation of light, heat or power now or at any time hereafter located upon any of the real estate above described.

"All plants, mills, factories, buildings, structures, fixed and movable machinery with their spare parts and attachments, apparatus, appliance, equipment and accessories of the Company now or at any time hereafter located on or appurtenant to or used in the operation of or in connection with any real property hereinabove described and also all such plants and all other such property at any time located on or appurtenant to or used in the operation of or in connection with any real property hereafter subjected to the lien of this indenture; provided, however, that the grant of this clause shall not be deemed to apply to tools, boats or other floating equipment, rolling stock, motor vehicles, raw materials, merchandise, supplies, storeroom contents, work in progress and manufactured products or other current assets. The effect of the above general words of description shall not be deemed to be lessened or impaired by any specific description hereinabove contained."

When the mortgage was executed and delivered, the company owned a sawmill and an adjacent lumber yard located on the land at Camden covered by the mortgage. It had no planing mill at the time, but shortly afterwards rented one and used it in connection with its other operations, because it found that business conditions had so changed that it was necessary to dress and finish its rough lumber in order to dispose of it to advantage. In 1930 this planing mill was destroyed by fire. Thereupon the company erected a planing mill of its own on a tract of land about three-quarters of a mile distant from its sawmill and lumber yard, and at the same time established a new lumber yard adjacent to the new planing mill because the old lumber yard had proved damp and unsatisfactory by reason of its proximity to the Elizabeth river. The new plants were separated from the old by lands of intervening owners. They were connected with the old by the tracks of the Dismal Swamp Railroad Company, all of whose stock belonged to the lumber company, and was covered by the mortgage. The new planing mill used power manufactured at the power house located at the old plant. The fact that the new mill and lumber yard were located on farm land not described in the mortgage gives rise to this suit. The special master held that they were not appurtenant to or used in the operation of or in connection with any real property described in the mortgage and were therefore not subject to its lien. The District Court reached the same conclusion and dismissed the bill.

In substance, the argument of the receivers is as follows: The lien of the mortgage was not imposed upon the industry as a whole, as appears from numerous exclusion clauses relating not only to the real estate but also to tools, boats,

vehicles, rolling stock, raw materials, etc., but was confined to the property specifically described so as to leave the company free to use, sell, or otherwise dispose of the remainder of its property at will. There is no occasion for an after-acquired property clause in a timber mortgage like this because the debt is paid off by means of the liquidation of the mortgaged timber through the payment of a depletion charge into a sinking fund. The clause to be interpreted in substance is: "All plants, &c. now or at any time used in connection with the described property." The words "located on or appurtenant to or used in the operation of" the described property should be eliminated from consideration because the new plants (1) are not located on the described property, (2) are not appurtenant to that property, since only incorporeal rights can be appurtenant to real property, and (3) are not used in the operation of the sawmill. Nor is the new planing mill used in connection with the real estate described in the mortgage or with the sawmill located thereon. It is true that the planing mill is used in connection with the business of merchandising the lumber, but, to fall under the lien of the mortgage, this is not sufficient. The mill must be used in connection with the property itself directly and in a mechanical or physical manner and not indirectly in its effect upon the manufactured product. Otherwise the interpretation of the language would be so broad that it would include a furniture factory located at a distance from the planing mill and a retail furniture store located at a distance from the factory, if the company should establish such features in connection with its business of manufacturing lumber. Such results indicate that the meaning for which the trustees contend cannot be applied to the language under consideration. Finally, the language of the mortgage on which the trustees rely is in the nature of an after-acquired property clause which, if any question as to its meaning arises, must be strictly construed against the mortgagee under the established rule. Cleveland Trust Co. v. Consolidated Gas, E. L. & P. Co., 4 Cir., 55 F. 2d 211. The receiver also adopts the argument of the special master that even if the mortgage was intended to cover the industry on the land as well as the land itself, it would not avail the bondholders because the planing mill was not a part of the industry at the time that the mortgage was executed.

These considerations are not without weight, but we see no escape from the conclusion that the planing mill and new lumber yard fall within the words of the mortgage "all plants, mills, factories, &c. with their equipment and accessories * * * now or at any time hereafter * * * used * * * in connection with any real property hereinabove described." Quite clearly the planing mill and lumber yard are described in this list, and it is of no consequence that they were not in existence when the mortgage was executed in view of the language "now or at any time hereafter * * * used * * * in connection with any real property." The mortgage bonds ran for a term of twenty years and the inclusion within the lien of plants later established to meet business changes or improvements was clearly contemplated. That the character of the business and the contingencies that might arise in the future were in the minds of the parties is indicated not only by these words, but by later provisions in the mortgage including in the property conveyed "the good will of the business now or hereafter carried on by the company on the mortgaged property."

It cannot be said that the new properties were not used in connection with the mortgaged property in that they had no physical contact with the land itself; because the mortgage further provides that all machinery, apparatus, appliances, equipment, and accessories then or thereafter conveyed to the trustee should be real estate for all purposes of the indenture and should be held and taken to be fixtures and appurtenances of the real property thereby conveyed. It may be noted in passing that the word "appurtenance" was used by the parties in this connection to mean physical property and not in the technical sense of an incorporeal right. Nor is it true that the new properties were not used in connection with the existing sawmill plant. The logs procured by the company from its timber land or elsewhere were brought to the mill to be sawed into boards, which of necessity were then piled for drying and storage in a lumber yard. Can it be said that when the lumber yard was moved to the new site to take advantage of improved conditions it was not used in connection with the sawmill that was covered by the mortgage? In like manner the necessity of using the planing mill to finish and dress the lumber produced at the sawmill before marketing it brought these two

plants into such a relation that they were in a very true sense used or operated in connection with one another. If both plants had been located on the same tract of mortgaged land, it seems unlikely that any one would ever have questioned such a description of their relation to one another.

The paragraph under consideration is intended to cover plants, mills, etc., whether existing or not at the time of the execution of the mortgage, or whether located or not on the mortgaged property, provided that they are used in the operation of or in connection with that property. It is difficult to conceive of any application for this language so far as it relates to after-acquired plants or mills, located beyond the confines of the mortgaged tract, if it may not be applied to property so closely related to the existing sawmill plant as the new plants now under consideration. The argument of the receivers does not depend in any sense upon the distance of three-quarters of a mile existing between the properties, for it would be equally relevant to a situation in which the planing mill and lumber yard would be in close proximity to the sawmill, provided that they would not be on the mortgaged land. The language in question does not relate to movable property, used in the business of the company, which might or might not be located on the property, as the occasion might require, because in the quoted paragraph above set out, it is expressly provided that the grant shall not be deemed to apply to tools, boats, or other floating equipment, rolling stock, motor vehicles, raw materials, merchandise, supplies, storeroom contents, work in progress, and manufactured products or other current assets. All of these being eliminated, there remain no properties except such as are involved in the pending case to which the language could apply. It is manifest from a consideration of the whole paragraph, as well as other phraseology in the mortgage, that the language in dispute was not used in a narrow or technical sense, but rather with the idea of covering not only the properties then used on the mortgaged land, but also such other properties as might thereafter be used in connection therewith, to the end that in case of default all of the properties thus constituting an integrated enterprise would serve as security for the debt due the bondholders. It is of course not necessary as a logical sequence to extend this conclusion relating to plants used in the manufacture of saleable lumber so as to embrace a furniture factory or retail store.

The special master has found that the planing mill and lumber yard are located on a portion of the tract of 12,000 acres of the land belonging to the company above referred to; and that the amount of land necessary for the operation of the planing mill is 10.25 acres and the amount of land adjacent thereto used by the lumber yard is 16 acres, the metes and bounds of which smaller tracts are shown on a map filed with the master's report. In view of our conclusion, these tracts are subject to the lien of the mortgage, and the case must be remanded for further proceedings so that a decree may be passed in accordance with this opinion.

Reversed and remanded.

NORTHCOTT, Circuit Judge (dissenting).

In view of the established rule that an after-acquired property clause in a mortgage must be strictly construed against the mortgagee, Cleveland Trust Company v. Consolidated Gas, E. L. & P. Co., 4 Cir., 55 F.2d 211, I cannot agree that the clause in the mortgage here can be construed as covering a planing mill and lumber yard, not in existence when the mortgage was given, constructed on real estate expressly excluded from the mortgage and located three-quarters of a mile from the saw-mill and lumber yard of the mortgagor.

At the time of the execution of the mortgage no planing mill was owned or operated by the mortgagor and no mention is made of a planing mill in the mortgage. At that time the mortgagor corporation was engaged in the manufacture of lumber and it had not found it necessary to finish its lumber in order to facilitate the sale of its product. There could have been no thought of including an after-erected planing mill in the mortgage. The lumber yard expressly covered by the mortgage was not in any way changed and still exists as it was when the mortgage was executed.

If the after-acquired property clause here is to be construed to cover the planing mill, erected to facilitate the marketing of the manufacturing company's product, why would it not be a logical sequence, in the event it was deemed best in order to further facilitate such marketing, to erect a furniture manufacturing plant, to hold that the clause would cover the latter plant?

I am of the opinion that the court below was right in holding that the property in question is not appurtenant to or used in the operation of or in connection with any real property described in the mortgage. The decree of the court below should be affirmed.